ATLANTIC CITY R. CO. v. CLEGG.

(Circuit Court of Appeals, Third Circuit. November 28, 1910.)

No. 44.

CARRIERS (§§ 247, 327, 320, 347*)—INJURY TO PASSENGERS—MANAGEMENT OF TRAINS AT RAILROAD STATION.

　　Plaintiff's intestate entered the waiting room at a station on defendant's railroad, having the return part of a round-trip ticket, and, after inquiring the time of his train, sat down and waited for it. There were two tracks in front of the station building and his train passed on the farther one. A street crossed the tracks at the end of the station, paved with concrete, and from it and on the same level a paved platform extended on the outer side of each track, there being no division between the pavement of the street and the platforms. A picket fence also extended from the street between the tracks past the station, which prevented crossing except on the street. An automatic bell was rung by every train from the time it approached until it left the station. The train of plaintiff's intestate stopped with the rear car on the street cross-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date; & Rep'r Indexes

ing, and, as he was passing to it from the waiting room along the street, he was struck and killed by a through train on the nearer track going in the opposite direction at high speed. *Held*, that deceased was a passenger, and did not lose that relation by entering upon the street to reach his train which was at the implied invitation of defendant; that he had the right to act on the assumption that defendant would exercise proper care not to injure passengers while passing from the waiting room to the train by the only way open to them; and that the questions of negligence and contributory negligence were for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 987, 989, 1365, 1167, 1402; Dec. Dig. §§ 247, 327, 320, 347.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

Action by Mary S. Clegg, administratrix of Charles A. Clegg, deceased, against the Atlantic City Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Thompson & Cole, for plaintiff in error.

Frank S. Katzenbach, Jr., for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

BUFFINGTON, Circuit Judge. In the court below Mrs. Mary S. Clegg, administratrix and wife of Charles S. Clegg, brought suit against the Atlantic City Railroad Company for its alleged negligence in causing his death. She recovered a verdict, and on entry of judgment thereon in her favor the railroad sued out this writ.

The accident in which the decedent lost his life occurred at the defendant's station at Magnolia, N. J. The ticket office and waiting room are at the side of a platform which runs along the south-bound track, and there is another open platform along the north-bound track. Eversham avenue, a public street, crosses the two tracks at the south end of the station. A picket fence between the two tracks extends from that avenue northward, and prevents passengers crossing from one platform to the other, except by using the avenue. The two platforms and the street are all made of concrete, are on the same level, and there is no dividing or marked line between platforms and street. North-bound trains often stopped at Magnolia station with a car standing on Eversham avenue, and passengers were accustomed to get off the cars on either side, using the street as a disembarking platform. There was an automatic bell, rung by an approaching train, and which kept ringing until the train left the station. There was neither watchman or gate at the crossing, and the station agent was the only employé. He was absent at the time of the accident, having gone to the post office to get the mail bag which it was his duty to put on the train. The testimony on plaintiff's behalf tended to show that on the day before the accident the decedent came to Magnolia on a train from Camden, and had a return round-trip ticket to that place. The next morning he went to the station shortly before 9 o'clock, reaching it from the waiting room side. He went into the waiting room, learned from the ticket agent, who had not yet gone out for the mail, the time

of his return train to Camden, and then sat down to wait. His train came in shortly thereafter, and its last car stopped with its rear platform steps beyond the fence and opposite the Eversham avenue crossing. Its approach set in motion the automatic bell, and it was ringing when the deceased left the waiting room to take his train and crossed the south-bound track on the avenue. Just before he reached the train and while crossing the latter track, he was struck and killed by a scheduled express train which passed the station on the south-bound track without stopping. This train, which was ten minutes behind time and was running at high speed, blew for the crossing, and the deceased, had he looked before he crossed the track, could have seen it.

It will thus be seen the case turns on the relation the decedent and the railroad bore to each other, and its reversal is conditioned on the adoption by this court of the contention made in the brief of the railroad's counsel, viz.: "Entering upon the highway over which the railroad had no possible control destroyed the relation of carrier and passenger, if such existed, at any time prior thereto." This, in effect, would be to say that the decedent at the time of the accident stood in the relation of a stranger to the railroad, and that it owed no greater duty to him than to a pedestrian crossing its tracks by this public street. We think, however, there was evidence from which a jury was justified in finding the deceased bore at the time of the accident the relation of a passenger to the railroad, and that it failed to exercise due care for his safety. In point of fact the deceased had a ticket. He was waiting for the train's approach in a place provided by the railroad, and he could only reach its train by using the public street. The erection by the railroad of its fence, its use of the street as a train approach or platform, and stopping its train on the street, were acts from which a jury could infer the railroad invited the deceased to use the street as an approach or platform. It must be conceded that the relation of passenger existed when Mr. Clegg entered the waiting room, inquired for his train, and with a ticket in his possession sat down to await his train. If so, did that relation cease when he crossed an invisible and unmarked property line on the level platform and took the only path the railroad provided for him to get upon its train? To hold that under such circumstances the relation of passenger ended when he crossed the street line would seem unreasonable. As between the railroad and the municipality, the platform and the street were two different things, but, as between the passenger and the railroad, the latter had made them one by using it as the only means of approach to its north-bound trains and by impliedly inviting him to take it. The defendant had no one there to direct the decedent. The ringing signal was a warning given by the north-bound train, and, under the circumstances and the implied invitation to cross, the decedent was justified in assuming the railroad would warn him of danger threatening his crossing. While the case is not on all fours with Warner v. Baltimore, etc., R. Co., 168 U. S. 346, 18 Sup. Ct. 68, 42 L. Ed. 491, yet both are governed by the general principle there stated:

"The situation of the tracks, the location of the station building and the waiting room, the coming of the local train, and its stopping to receive passen-

gers in a position which required the latter to cross a track in order to reach the train involved necessarily a condition of things which under one view of the testimony constituted an implied invitation to the passenger to follow the only course which he could have followed in order to take the train; that is, to cross the track to the waiting train. Whilst it is true, as was said in Terry v. Jewett, supra, that such implied invitation would not absolve a passenger from the duty to exercise care and caution in avoiding danger, nevertheless it certainly would justify him in assuming that in holding out the invitation to board the train the corporation had not so arranged its business as to expose him to the hazard of danger to life and limb unless he exercised the very highest degree of care and caution. The railroad, under such circumstances, in giving the invitation, must necessarily be presumed to have taken into view the state of mind and of conduct which would be engendered by the invitation, and the passenger, on the other hand, would have a right to presume that in giving the invitation the railroad itself had arranged for the operation of its trains with proper care. The doctrine finds a very clear expression in a passage in the opinion in the Terry Case [78 N. Y. 334], already referred to, where it was said: 'It may be assumed that a railroad corporation, in the exercise of ordinary care, so regulates the running of its trains that the road is free from interruption or obstruction where passenger trains stop at a station to receive and deliver passengers  Any other system would be dangerous to human life, and impose great risks upon those who might have occasion to travel on the railroad.' "

The case having been submitted to the jury in accordance with the foregoing principles, and the evidence such as to warrant a verdict based on negligence of the railroad and an absence of contributory negligence of the decedent, the judgment below is affirmed.