B. F. WALLACE v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 3 October, 1917.)

1. **Carriers of Passengers—Intermediate Point—Leaving Train—Contract of Carriage—Negligence.**

   One who has purchased his ticket to his destination on a passenger train does not relieve the railroad of its duty to him as such passenger by getting off the train during its stop at an intermediate station, without notice to its employees or objection from them, to see some person there on business.

2. **Carriers of Passengers—Evidence—Single Witness—Negligence—Declarations—Appeal and Error.**

   Where there is evidence of negligence on the part of a railroad company in injuring a passenger while boarding a train at its station, and his attending physician has testified in defendant's behalf as to statements he made to his as to how the injury occurred, which, if true, would exclude his recovery, an instruction that. should the jury find the facts to be as testified to by this witness, to answer the issue as to defendant's negligence, "No," is properly refused, as such would be the singling out the testimony of one witness from that of others, relating to the facts at issue, and referring to evidence not directly testified to by him; and especially so, when there is evidence that the plaintiff was then in such pain that he did not understand the meaning of his words.

3. **Instructions—Negligence—Declarations—Verdict Directing—Trials—Contributory Negligence.**

   A prayer for instruction that the jury should answer the issue as to defendant's negligence in the negative if they found certain declarations made by plaintiff to be true, is improper, when the declarations are not inconsistent with plaintiff's evidence, which is sufficient to support an affirmative finding, and when the evidence referred to in the requested prayer properly relates to the issue as to contributory negligence.

4. **Appeal and Error—Carriers of Passengers—Moving Train—Contributory Negligence—Instructions—Harmless Error.**

   An instruction given in this case, that if plaintiff attempted to board a moving train and received the injury complained of, he cannot recover, is not open to defendant's exception, or one of which he can complain, as boarding a moving train does not always amount to such contributory negligence as will bar a recovery.

CIVIL ACTION, tried before *Daniels, J.,* at February Term, 1917, of BEAUFORT.

This is an action to recover damages for personal injury, caused, as the plaintiff alleges, by the negligence of the defendant, in that, while getting on the train at Pinetown as a passenger, the defendant negligently caused its train to move suddenly and with a violent jerk, which caused him to fall and to be seriously injured.

The defendant denies negligence, and contends that the plaintiff was not a passenger at the time of his injury, and that he was injured by his

own contributory negligence, in that he was trying to get on a moving train.

All of the evidence tends to prove that the plaintiff became a passenger of the defendant at Washington, N. C., and that his destination was Mizell; that he left the train temporarily at Pinetown, an intermediate station, at which the train stopped two or three minutes, for the purpose of meeting some one on business, and that he was injured when returning to the train.

The evidence of the plaintiff tends to prove that the train was not in motion when he stepped on the train; that there was ice on the step, and that while on the steps, entering the train, there was a violent, unusual movement of the train, which caused his injury.

The evidence of the defendant tends to prove that there was no violent movement of the train, and only such as was usual and necessary, and that the train was in motion when the plaintiff attempted to return to it.

Dr. Hunter, a witness for the defendant, testified to a conversation with the plaintiff on the morning of his injury, while in the hospital, as follows:

"He told me that morning how it happened. He said he went to Washington that afternoon, and was going back on the night train to Mizell to meet a man named Cherry, and that when he got to Pinetown he got off the day coach and walked back and crossed over the rear of the day coach to the woods side—that is, the side opposite the depot—and that then he walked back towards the Pullman cars, looking for his man, and then turned around and walked back a way, and by that time the car was moving, and he grasped the handle of the steps of the car of the front coach and missed his hand-hold, and his body swung between the two coaches. He said that the steps of the car that was coming hit him in the right side. He grasped the rail of the pasenger coach and mised the steps with his feet, and that the steps of the oncoming car struck him on the right side, and that he fell under the cars, and that he realized he only had a second to get out, and that he put his right foot on the rail and pushed hmiself out and got clear, all except the foot that was on the rail, and that the wheel of the car ran over him. He said that when he started to get on the train he was on the opposite side from the station. I don't think any one on the station side could have seen him unless they were looking especially for him. He said that the car was moving, was the reason he missed it. I am a friend of Mr. Wallace. I have treated him for delirium tremens. He said he grabbed the hand-rail and that the steps immediately behind struck his side. It was a year or more before this happened that I treated him for delirium tremens. I don't know how long he had been drinking liquor. He was not drinking the night this happened."

Preceding the testimony of Dr. Hunter, plaintiff testified: "I couldn't say for certain whether I told Dr. Hunter how I got hurt or not. I don't remember whether I did or not. I don't remember whether I told him that the train was in motion and that I caught hold of one of the hand-rails and that the Pullman step struck me. I couldn't say whether I made that statement or not. A man in the fix I was in would be liable to tell anything. He wouldn't be liable to tell a story if he knew what he was doing at the time. If I knew what I was saying, what I told Dr. Hunter was the truth, because I had no object in telling him anything but the truth."

Following the testimony of Dr. Hunter, plaintiff was recalled, and said: "I don't remember that he talked to me at all." Plaintiff also testified, on his direct examination, that when the train started up at Pinetown, "I was starting up the step and looked around to see if I saw Cherry coming, when they snatched the train. It was a hard snatch—hard enough that it pulled my left hand loose and I swung around and hit the side of the car and went under. The steps were sleety—I saw them. When the train snatched, I swung around and hit the side of the car, and that wrung my hand loose and I fell to the ground, and my foot was cut off while I was down there."

The defendant requested the court to charge the jury as follows:

1. The court charges you that if you find from the evidence that plaintiff dismounted from the train, left the station and went on the opposite side of the track from where it took on and put off passengers, and that the defendant was not notified of the intention of the plaintiff to leave the train for a temporary purpose, that then the contract of carriage between the plaintiff and defendant would have terminated, and that the defendant would not owe any duty to the plaintiff, except not to injure him, knowingly; and it will be your duty, on all of the evidence, if you should find these facts to be true, to answer the first issue "No."

2. The court charges you that if you should find the true facts with reference to this injury to be as testified to by Dr. Hunter and as disclosed by his statement which was introduced in evidence, that there would be no negligence on the part of the defendant, and you should answer the first issue "No."

3. The court charges you that if you find, from all of the evidence, that plaintiff attempted to board the train after it had started up, and missed his foothold or handhold, that you should answer the second issue "Yes."

The court refused to give the first instruction, and did not give the others, except as they appear in the charge, and the defendant excepted.

There was no motion for judgment of nonsuit, and no request for peremptory instruction.

The jury returned the following verdict:

1. Was the plaintiff injured by the negligence of the defendant, as alleged? Answer: Yes.

2. Did plaintiff contribute to his injury by his own negligence, as alleged by defendant? Answer: No.

3. What damages, if any, is plaintiff entitled to recover? Answer: $2,900.

Judgment was rendered in favor of the plaintiff, and the defendant appealed.

*Ward & Grimes for plaintiff.*
*Small, McLean, Bragaw & Rodman for defendant.*

ALLEN, J., after stating the case: There is authority for the position presented by the defendant in the first prayer for instruction (*S. v. Grand Trunk Ry. Co.,* 58 Me., 176; *De Kay v. R. R.,* 41 Minn., 178); but the better rule, and one supported by the weight of authority, is that a passenger does not lose his rights as such by leaving the train temporarily at an intermediate station for a lawful purpose. 10 C. J., 624; 4 R. C. L., 1040; *R. R. v. Satler,* 64 Neb., 636; *Dodge v. R. R.,* 148 Mass., 207; *Parsons v. R. R.,* 113 N. Y., 355; *R. R. v. Coggins,* 32 C. C. A., 1, and other authorities in the note to the citation to *Corpus Juris* and Ruling Case Law.

The author in *Corpus Juris* states the principle as follows: "The relation ordinarily terminates when a passenger chooses to abandon his journey at a point before reaching the place to which he is entitled to ride. But a temporary departure from the train for any good or reasonable cause, without an intention to abandon transportation, does not terminate the relation. As a general rule, a passenger does not lose his character as such by merely temporarily alighting at an intermediate station, with the express or implied consent of the carrier, for any reasonable and usual purpose, such as the procuring of refreshment, the sending or receiving of telegrams, or for the purpose of exercising by walking up and down the platform, or even from motives of curiosity."

And the Court said, in the Nebraska case, "In this country of long journeys by railway trains there can be no impropriety in a passenger claming the right, which may be said to be established by long custom, to leave his car at an intermediate point on his journey, where a stop of any considerable time is made, to send a message, to obtain exercise and relief by walking up and down the platform, or to gratify his curiosity, provided he does not interfere with the employees of the company or run counter to any established rule brought to his notice. In the exercise of this privilege he does not lose his character of passenger, and the com-

mon-law duties of the carrier are still to be exercised in his behalf, and injuries received on account of a failure on the part of a carrier to observe all its duties toward him required by the rules of the common law must be responded to in an action for damages." In the Massachusetts case: "To determine the rights of the parties in every case, the question to be answered is, What shall they be deemed to have contemplated by their contract? The passenger, without losing his rights while he is in those places to which the carrier's care should extend, may do whatever is naturally and ordinarily incidental to his passage. If there are telegraph offices at stations along the railroad, and the carrier furnishes in its cars blanks upon which to write telegraphic messages, and stops its train at stations long enough to enable passengers conveniently to send such messages, a purchaser of a ticket over the railroad has a right to suppose that his contract permits him to leave his car at a station for the purpose of sending a telegraphic message, and he has the rights of a passenger while alighting from the train for that purpose, and while getting upon it to resume his journey. So of one who leaves a train to obtain refreshments, where it is reasonable and proper for him so to do, and is consistent with the safe continuance of his journey in a usual way. Where one engages transportation for himself by a conveyance which stops from time to time along his route, it may well be implied, in the absence of anything to the contrary, that he has permission to alight for his own convenience at any regular stopping place for passengers, so long as he properly regards all the carrier's rules and regulations, and provided that his doing so does not interfere with the carrier in the performance of his duties." In the New York case: "We do not think that a passenger on a railroad train loses his character as such by alighting from the cars at a regular station, from motives of either business or curiosity, although he has not yet arrived at the terminus of his journey." And in the case from the Circuit Court of Appeals: "But we think the weight of authority, reason, and custom all require us to hold that where a passenger, without objection by the company or its agents, alights at an intermediate station, which is a station for the discharge and reception of passengers, for any reasonable and usual purpose, like that of refreshments, of the sending or receipt of telegrams, or of exercise by walking up and down the platforms, or the like, he does not cease to be a passenger, and is justified in the belief that the company is exercising due care for his safety."

These authorities, and the reasoning on which they are based, are satisfactory to us, and justify the refusal to give the first prayer for instruction.

There are several objections to the second prayer. In the first place, Dr. Hunter knew nothing of the facts and did not testify to them, his

evidence being confined to a conversation with the plaintiff; but if we give a broader interpretation to the prayer, it is objectionable as singling out the evidence of one witness and directing the attention of the jury to that instead of to all the evidence bearing upon the issue.

The answer to the second issue, taken in connection with the charge, also shows that the jury accepted the theory of the plaintiff that the conversation with Dr. Hunter was while he was in such pain that he did not know what he was saying.

Again, the statement made by Dr. Hunter is not necessarily inconsistent with the evidence of the plaintiff at the trial, that there was a violent movement of the train; and if the two could stand together, the evidence of Dr. Hunter was material on the second issue of contributory negligence, and not on the first issue, to which the prayer was directed.

This is evidently the view taken by his Honor, as he charged the jury: "Now, if this evidence satisfies you, by its greater weight, that the plaintiff got off the train at Pinetown, holding a ticket for a point beyond Pinetown, got on the opposite side of the train from the station and waited until after the train had started to pull out, and that he then attempted to catch the train while it was in motion, then the plaintiff would be guilty of contributory negligence, and it would be your duty to answer the second issue 'Yes.'"

This was perhaps too favorable to the defendant, as it is not contributory negligence in all cases to get on a train while in motion, but of this the defendant cannot complain, and this excerpt from the charge also shows that the third prayer was given.

No error.