HENNESSEY, Admx., Appellant, *v.* INTERMOUNTAIN TRANSPORTATION CO., Respondent.

(No. 7,976.)

PIERRE, Appellant, *v.* INTERMOUNTAIN TRANSPORTATION CO., Respondent.

(No. 7,977.)

(Submitted February 26, 1940. Decided April 5, 1940.)

[102 Pac. (2d) 489.]

*Mr. M. J. Doepker,* for Appellants, submitted a brief, and argued the cause orally.

*Mr. Howard Toole* and *Mr. W. T. Boone,* for Respondent, submitted a brief; *Mr. Boone* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

These are appeals by plaintiffs from judgments in favor of defendant for costs in two separate actions after defendant's demurrers to the complaints were sustained. The two cases were consolidated on appeal. The sole question presented is whether the complaints state facts sufficient to constitute causes of action against defendant Intermountain Transportation Company.

The complaints are based upon injuries to and death of Sam Pierre and are identical except as to damages. What we have to say of one complaint applies equally to the other. The important allegations are these: The Intermountain Transportation Company is engaged in operating bus lines for the transportation of passengers for hire. It has maintained a depot near the center of the business section of the town of Arlee for the convenience of intended passengers. It operates a bus line through the town of Arlee on United States Highway No. 93, a much used and traveled highway. The speed limit for automobiles in the town was 25 miles per hour, of which the public was advised by road signs plainly visible.

It is alleged that on the 12th day of July, 1937, Sam Pierre "accepted the invitation of the defendant Intermountain Transportation Company to become a passenger on one of its busses from the town of Arlee to the city of Missoula, during the forenoon of said day and in broad daylight; that in preparing to board said bus, the said Sam Pierre tendered a cash fare to the operator thereof, and said operator * * * directed the said Sam Pierre to cross the highway and obtain a ticket at the depot," and that while so doing Pierre was struck by an automobile driven by Robert Scheffels, sustaining injuries from which he died that evening.

The complaints specify negligence on the part of the transportation company because it: "a. * * * Stopped the bus * * * on the highway in front of the depot * * * on the main traveled portion of said highway number 93 in such manner that it obstructed traffic moving in a southeasterly direction on said highway, while discharging and taking on passengers. b. * * * Used said highway for the taking on and discharge of passengers, thereby obstructing the same, when there was ample space, at said time and place, by the side of the depot of said defendant, for such purpose, without obstructing said highway. c. * * * Parked and stopped the defendant corporation's bus so close to the center of said highway and the principal traveled portion thereof, that it was impossible for Sam Pierre, at said time and place, to see traffic approaching from the northwest without placing himself in a position of danger. d. * * * Refused to accept the cash fare from Sam Pierre, but instead directed him across said highway to purchase a ticket, when from his position in said bus, said operator could observe and did observe, Robert Scheffels, operating his automobile southeasterly on said highway approaching said bus, and by negligently failing to warn Sam Pierre that Scheffels' automobile was then approaching, when it was evident that the said defendant, Scheffels, was not going to stop his automobile but intended to pass around said bus on said highway." The complaints then proceed to allege wherein

Scheffels was negligent in driving into and against Sam Pierre, causing his injuries and death.

The district court in sustaining the demurrer held that the ██ relation of passenger and carrier had not been initiated at the time of the injuries, and that the negligence of the Intermountain Transportation Company alleged in the complaints was not and could not have been the proximate cause of the accident.

While, as above noted, the complaints allege that Pierre accepted the invitation of the defendant to become a passenger, yet it is clear from all the facts alleged in the complaints that the relationship had not in fact arisen at the time of the injuries to Pierre. The defendant expressly declined to accept him as a passenger until he had obtained a ticket. While, generally speaking, the question whether a person is a passenger or not is one of mixed law and fact, yet it is the rule that the question whether certain facts will create the contract relationship of carrier and passenger is one of law. (4 R. C. L. 1029; and see, also, *Todd* v. *Louisville·& N. R. Co.*, 274 Ill. 201, 113 N. E. 95, L. R. A. 1916F, 543.)

The authorities are clear that the relationship of passenger and carrier rests upon contract, express or implied. (See 13 C. J., sec. 1049, and 10 Am. Jur. 27.) While it is not necessary in all cases that a person should have a ticket before he becomes a passenger, yet if that be a requirement on the part of the carrier, the relationship does not exist until the ticket has been purchased. In any event, if a person becomes a passenger without the purchase of a ticket, it must be by reason of the circumstances implying acceptance by the carrier of the passenger after he has placed himself under the care and control of the carrier. (See, generally, 10 Am. Jur. 27, 28.) The trial court was correct in holding that, under the circumstances here involved, the relationship of passenger and carrier had not arisen at the time of the accident in question. It follows that the only duty owing by the carrier to Pierre was that which it owed to any other member of the public.

We then come to the question whether such negligence on the ▄ part of the transportation company as that of parking its bus on the traveled portion of the highway and other acts of negligence alleged could be held to have been the proximate cause of Pierre's death. There are cases, though not identical with this on facts, which point the way to the correct conclusion. In *Lewis* v. *Pacific Greyhound Lines,* 147 Or. 588, 34 Pac. (2d) 616, 619, 96 A. L. R. 718, the bus company discharged its passengers by stopping on the paved portion of the highway. The plaintiff in that action was discharged as a passenger at a safe place. He then walked to the rear of the bus and started across the pavement when he was injured by an automobile. The court held that there was no liability on the part of the carrier and based its decision primarily upon the fact that the relationship of passenger and carrier had ceased. The court, however, went on to say: "Assuming, but not conceding, that the defendant bus company was negligent in failing to discharge the plaintiff as a passenger on the west side of the highway in front of the restaurant or barbecue stand, it is believed that such negligence has no causal connection with the injury sustained. With all deference to those who are of a different opinion, we can reach but one conclusion, viz., that the proximate cause of the injuries of which plaintiff complains was either the negligence of the driver of the car which struck him or his own negligence in failing to exercise due care to avoid being injured while undertaking to cross the highway."

The case just cited was by a divided court. The dissenting Justices took the view that since the accident happened at night when it was dark, and since plaintiff had on the day previously taken one of defendant's stages, and since on that occasion it stopped in front of its ticket office on the westerly side of the highway instead of the easterly side, the carrier was under obligation to warn the passenger of the fact that in order to get to the depot he would have to cross the highway. If we accept the opinion of the dissenting Justices as the better view as applied to the facts of that case, it would not aid plaintiffs here. Under the facts here presented plaintiffs do not even

come within the rule stated by the minority view in that case. Here the accident happened in broad daylight and the decedent knew, or should have known, that he was crossing a well-traveled highway at the time in question.

The conclusion reached in the above case was followed, under very similar facts, in the case of *Corrigan* v. *Portland Traction Co.*, 157 Or. 496, 73 Pac. (2d) 378, 379. The court in that case quoted from the case of *Waldron* v. *Southwestern Bus Co.*, 42 Ohio App. 549, 182 N. E. 596, as follows: " 'The defendant company, while she [plaintiff] was a passenger, owed her a high degree of care for her safety, but she alighted from the bus in a place of safety and the relation of carrier and passenger thereupon terminated. The proximate cause of her subsequent injury was either her own negligence in walking in front of an approaching automobile, or the negligence of the operator of such automobile, and the defendant was in no sense responsible for the injury resulting therefrom. Having discharged the passenger in a place of safety, there could be no causal connection between that act and the injury which she suffered. She was familiar with the surrounding conditions, and the operator of the bus owed no duty to warn her of approaching automobiles.' " To the same effect is *Williams* v. *East Bay Motor Coach Co.*, 16 Cal. App. (2d) 169, 60 Pac. (2d) 320.

A somewhat analogous case is that of *Klovedale* v. *Ohio Pub. Service Co.*, 54 Ohio App. 244, 6 N. E. (2d) 995, 996. There, too, it was contended that the bus company was negligent in choosing its place to stop for receiving and discharging passengers, in that it was not done at a place of safety, and, like here, it was maintained that the bus driver saw the plaintiff in a perilous position and made no effort to warn her. The court pointed out that a bus company is different from a railroad company, since they operate their busses over highways over which they exercise no control. The court then said: "Keeping in mind what we have previously stated, it appeals to us with greater force that a street car company or bus carrier is not bound to warn those seeking transportation of the presence of ordinary street hazards which are well known and

apparent to all who will give heed.'' In that case the court pointed out that the plaintiff had not become a passenger at the time she was injured and cited cases sustaining that view. It quoted from the case of *Duchemin* v. *Boston Elev. R. Co.*, 186 Mass. 353, 71 N. E. 780, 104 Am. St. Rep. 580, 1 Ann. Cas. 603, 66 L. R. A. 980, as follows:

'' 'It is apparent that a person in such a situation is not in fact a passenger. He has not entered upon the premises of the carrier, as has a person who has gone upon the grounds of a steam railroad for the purpose of taking a train. He is upon a public highway, where he has a clear right to be independently of his intention to become a passenger. He has as yet done nothing which enables the carrier to demand of him a fare, or in any way to control his actions. He is at liberty to advance or recede. He may change his mind, and not become a passenger. Certainly the carrier owes him no other duty to keep the pavement smooth or the street clear of obstructions to his progress, than it owes to all other travelers on the highway. It is under no obligation to see that he is not assaulted, or run into by vehicles or travelers, or not insulted or otherwise mistreated by other persons present. Nor do we think that as to such a person, who has not yet reached the car, there is any other duty as to the car itself, than that which the carrier owes to all persons lawfully upon the street. There is no sound distinction as to the diligence due from the carrier between the case of a person who has just dismounted from a street car and that of one who is about to take the car, but has not yet reached it.' '' (See, also, *Louisa Villa* v. *United Elec. Rys. Co.*, 51 R. I. 384, 150 Atl. 366, 75 A. L. R. 282.)

Plaintiffs rely upon the case of *Atlantic City R. Co.* v. *Clegg*, (3 Cir.) 183 Fed. 216, but that case involved a railroad company which had control of the premises where the injury occurred, and had control also of the train that caused the injury. It is plain, therefore, that that case is not applicable here.

While, as above stated, the cases relied upon by us are not exactly the same in facts as the case at bar, yet in principle they sustain our conclusion that where, as here, the relationship

of passenger and carrier had not arisen there was no duty on the part of the defendant to warn plaintiff of the ordinary hazard of crossing the busy and well-traveled street in broad daylight; that the negligence of the defendant in parking its bus on the main traveled portion of the highway to receive and discharge passengers and where it would obstruct the vision of one attempting to cross the street in close proximity of the bus, was not the proximate cause of the injuries to and death of Sam Pierre. His injuries and death were caused either by the negligence of Scheffels or by his own negligence.

It follows that the complaints do not state facts sufficient to constitute causes of action against the Intermountain Transportation Company. Accordingly, the judgments must be and are affirmed.

MR. CHIEF JUSTICE JOHNSON, ASSOCIATE JUSTICES MORRIS and ERICKSON and HONORABLE R. E. McHUGH, District Judge, sitting in place of MR. JUSTICE ARNOLD, disqualified, concur.