FULLGRAF, Adm'x, v. OKLAHOMA RY. CO.

No. 29883. April 1, 1941.

*111 P. 2d 1072.*

Bliss Kelly and Harold Dodson, both of Oklahoma City, for plaintiff in error.

Hayes, Richardson, Shartel & Gilliland, of Oklahoma City, for defendant in error.

GIBSON, J. This is an action for wrongful death. Plaintiff appeals from the judgment entered on directed verdict for defendant.

The defendant operates an electric railway from Oklahoma City through the town of Britton. The accident occurred about 7 a. m. at a point known as stop 8 in Britton, where the deceased had gone for the purpose of boarding defendant's passenger car en route to Oklahoma City. Either by custom or pursuant to schedule this car had arrived at stop 8 and departed for Oklahoma City at approximately 7:04 each morning for many years. The deceased had been accustomed to boarding this car as a passenger at the hour last mentioned.

Deceased arrived at stop 8 some five or six minutes prior to the scheduled departure of the car, where he waited at a small shelter that had been erected by defendant for the accommodation of its customers. This shelter was located on the east side of the track, and therefore on the left side of cars going south toward Oklahoma City, making it necessary for intending passengers to cross to the opposite side in order to enter such cars. When anyone was waiting at the stop the passenger car usually halted immediately north of the path across the track, thus allowing intending passengers to pass to the west side in order to go aboard.

Approximately four minutes before the passenger car was due the defendant's freight train, consisting of an electric engine and four cars, approached stop 8 from the north. The deceased, evidently mistaking the train for the passenger car, attempted to cross the track ahead of the same with the intent of going aboard and was hit and fatally injured.

The allegations of negligence may be summarized as follows:

Defendant failed to provide a proper and safe place for passengers to cross the track; failed to sound proper signals to warn passengers that the freight train was not to stop; running the freight train approximately on the schedule of the passenger car knowing that passengers were likely to place themselves in a position of peril by attempting to cross the track to go on board; excessive speed of the train in the circumstances, especially with regard to decedent as an alleged passenger; insufficient brakes to bring the train to a stop in time to avoid the accident; failure to display lights or other evidence whereby the freight train might be distinguished from the passenger car; failure to exercise the utmost care and caution not to injure decedent after inducing him to place himself in a position of peril as a passenger:

Plaintiff administratrix rests her case primarily upon the theory that the relationship of passenger and carrier existed between her intestate and the defendant company at the time of the accident, thus placing upon defendant a high degree of care and diligence with respect to decedent's safety. Sections 9245, 9247, 9260, 9264, O. S. 1931, 13 Okla. Stat. Ann. §§ 5, 7, 32, 36; §§ 11942, 11961, O. S. 1931, 66 Okla. Stat. Ann. §§ 81, 126.

Those sections do not purport to define a passenger for hire, or to indicate at what point in the circumstances leading up to actual transportation the relationship of passenger and carrier shall commence. But the rule governing cases of this particular character and approved in the majority of jurisdictions is stated in 13 C. J. S. Carriers, § 556, as follows:

"A person who, with the bona fide intention of becoming a passenger and with the express or implied assent of the carrier, enters on the carrier's premises, at a proper place, in a proper manner, and at a proper time, ordinarily, has the status of a passenger, even before entering the carrier's vehicle."

Ordinarily, there must be an express or implied contract of transportation be-

tween the intending passenger and the carrier before the relationship commences (Schaff v. Samuels, 109 Okla. 133, 234 P. 195); and in the case of an electric interurban car the operator thereof must usually indicate to the party waiting at the ordinary flag stop that he accepts his indicated offer to become a passenger. 13 C.J.S. p. 1065. But in the instant case the deceased had entered into an express contract for transportation from the particular station to a certain destination. He owned and carried a book of commutation tickets entitling him to transportation as a passenger between stop 8 above mentioned and another designated station, and his contract specifically restricted his tickets to use at those stations.

The uncontradicted evidence shows that the decedent entered upon the premises with a bona fide intention of becoming a passenger, at a proper place, in a proper manner, and at a proper and customary time, and with the express assent and invitation of the defendant. He became a passenger at the time he arrived at stop 8.

From the time deceased reached defendant's premises at stop 8 the defendant was under legal duty to use the utmost care and diligence for his safe carriage. Section 9260, supra; Baker v. Hines, 88 Okla. 266, 213 P. 313.

By directing a verdict as aforesaid the trial court has held as a matter of law that the evidence failed to show a breach of the legal duty imposed on defendant by the statute. The statutes do not specifically define the duties of the carrier in such case. Section 9260 simply requires of the carrier the utmost care and diligence. Ordinarily, where the statutes do not define the duties of one party toward another in a given case, the court cannot determine as a matter of law that certain or specific acts will fulfill those duties, or say what omissions will constitute a breach thereof. In Missouri, K. & T. R. Co. v. Stanton, 78 Okla. 167, 189 P. 753, 755, the court had the following to say concerning the duty of the railroad toward the public with reference to trains approaching crossings:

"It is for the jury to say, from all the facts, the circumstances, and the surroundings at the time, whether or not ordinary care and caution were used. It is true the statute requires a special duty on the part of the railroad company as to the blowing of a whistle or ringing of the bell, but otherwise the court is positively prohibited from saying to the jury what acts shall constitute negligence in a given case."

We do not materially extend that statement when we say that it is for the jury to determine from all the facts and surrounding circumstances whether or not a carrier has used the utmost care and diligence for the safety of a passenger.

The general rule is that negligence is always a question for the jury when reasonable men may differ as to facts or as to inferences to be drawn therefrom. Wright v. Clark, 177 Okla. 628, 61 P. 2d 192. In cases of this character, if there is any evidence tending to show, or from which it may reasonably be inferred, that the carrier failed to use the utmost care and diligence for the safety of the passenger, the question of negligence in this regard must be left to the jury.

It is shown that the accident occurred before daylight on a morning in December. There was evidence that the freight train sounded a whistle similar to that ordinarily used by the passenger car to indicate that it was going to stop; there is also evidence to the contrary. There was evidence that the freight carried no lights sufficient to distinguish it from the passenger car, and there was contrary evidence. The speed of the train was between 15 and 20 miles per hour. It came to a stop some 75 feet beyond the place of the accident. There is evidence that the motorman sounded a well-known warning signal when he saw the deceased approaching the track.

This evidence, together with the fact that the train was running approximately on the regular schedule of the passenger car, was sufficient to warrant submission to the jury the question whether the defendant had performed its legal duty toward the deceased. It was

for the jury to say whether the defendant was negligent and that its negligence was the proximate cause of the accident, or whether, under the defense as pleaded, the decedent was guilty of contributory negligence. The jury should have been permitted to say whether proper warning was sounded; whether sufficiently distinguishing lights were displayed; whether the speed was excessive in the circumstances; whether the decedent had a right to assume that the approaching train was the regular car then due and that it would stop as was its custom. These matters were appropriate elements to be considered on the question of negligence in such case.

The case of Klingensmith v. West Penn Rys. Co., 303 Pa. 487, 154 Atl. 811, involved a state of facts almost identical to the facts in the instant case. The defense, however, was based entirely on the alleged contributory negligence of the plaintiff. In affirming the judgment for plaintiff, the court had the following to say:

"The car was traveling on the scheduled time of a regular car which was required to stop at this place. The morning was very dark and both distance and speed could not be accurately measured, and could easily be misjudged by one looking at the approaching car. Appellee traveled the walk provided by defendant to board the car. He had a right to assume that it was the regular car and would stop. He was mistaken; the mistake in this assumption was not the result of his carelessness, but was induced by defendant, and plaintiff should not be held negligent in doing an act which he believed was proper and that he had been encouraged to believe proper by the one who injured him."

The court held in effect that the passenger had a right to assume, in the absence of proper warning, that the car would stop short of the crossing used by the passengers.

Though the Klingensmith Case deals primarily with the question of contributory negligence, it is helpful in determining the question of the carrier's duties to the passenger.

We are of the opinion that the evidence is sufficient here to sustain a finding that the deceased had a right to assume that the train he saw approaching was the interurban car and would stop as was its custom, and that the operator thereof would use the utmost care and diligence for his safety. We also hold that the evidence is sufficient to support a finding that the operator did not use the utmost care and diligence to avoid the accident. The court therefore erred in directing a verdict for defendant. The issues of negligence, proximate cause, and contributory negligence should have been submitted to the jury.

The judgment is reversed and the cause remanded, with directions to proceed accordingly.

WELCH, C. J., CORN, V. C. J., and RILEY and OSBORN, JJ., concur.