SOUTHWESTERN MOTOR CAR-
RIERS, Inc., et al. v. NASH.

No. 31505. June 5, 1945.

Rehearing Denied June 26, 1945.

*159 P. 2d 745.*

Cruce, Satterfield & Grigsby and Ben Franklin, all of Oklahoma City, and Lawton Burton, of Lawton, for plaintiffs in error.

L. M. Gensman, of Lawton, for defendant in error.

PER CURIAM. This action was instituted by Florence Nash, the surviving wife of George Washington (Jack) Nash, deceased, to recover damages for his alleged wrongful death from Southwestern Motor Carriers, Inc., Pennsylvania Casualty Company, its insurance carrier, Russell Williams, one of the defendant's bus drivers, and H. J. Jeffries, d/b/a H. J. Jeffries Truck Lines, Employers Casualty Company, his in-

surance carrier, and Charlie Payne, one of his truck drivers. Liability of the defendants was predicated upon alleged acts of concurrent negligence, but as the jury found for the truck line and its driver and insurance carrier and plaintiff does not appeal, the allegations of negligence as against them will not be set out in this opinion.

The allegations of negligence on the part of the bus company and its driver were as follows:

"That on the 28th day of February, A. D. 1942, at 9:45 p. m., the said George Washington (Jack) Nash, desiring to obtain transportation from the City of Frederick, Oklahoma, to Thompson's Park, while standing at a point just east and in front of the bus station of the said defendant bus company on Tenth Street of the City of Frederick, Oklahoma, and seeing the said bus of said defendant Southwestern Motor Carriers, Inc., about to depart, attracted the attention of Russell Williams, the bus driver thereof, who, understanding the intention of the said Nash to become a passenger in said bus, stopped the bus for the purpose of taking the said George Washington (Jack) Nash as a passenger for hire. That the said George Washington (Jack) Nash, acting in good faith, with the intention of procuring passage for hire, and the said Russell Williams, understanding such intention of the said George Washington (Jack) Nash, he boarded the said bus and an oral contract of transportation was entered into by and between said Nash and the Southwestern Motor Carriers, Inc., through its servant and agent, Russell Williams that in pursuance of this contract of transportation so entered into by and between the parties aforementioned, the said George Washington (Jack) Nash, tendered cash payment to the said Russell Williams, who, being unable to make change, advised, requested and ordered the said Nash to proceed to said bus station and there to procure change and/or a ticket for the transportation of said George Washington (Jack) Nash to Thompson's Park.

"9. That the said George Washington (Jack) Nash, obedient to said order alighted from the said bus and carefully proceeded around the front thereof and toward the bus station, and when he had gotten to the point just past the front of said bus, he was struck by a truck of said defendant, H. J. Jeffries Truck Line, driven by the defendant Charlie Payne, the employee, agent and servant of said H. J. Jeffries Truck Line as aforesaid. That the impact of said truck against the body of the said George Washington (Jack) Nash prostrated him to the pavement and street and inflicted upon him mortal wounds from which he lingered from the date aforesaid until the third of March, 1942, when he died.

"10. Plaintiff further alleges that the said death of the said George Washington (Jack) Nash, was caused by the joint and concurrent negligence and want of care of the said defendants in either or all of the following particulars, to-wit:

"A. That the defendants and each of them were guilty of negligence and want of care in failing to keep a proper lookout for vehicles, pedestrians and other persons using said street at said time and place.

"B. That the said defendants, Southwestern Motor Carriers, Inc., and Russell Williams were guilty of negligence and want of care in discharging the said George Washington (Jack) Nash in the middle of the street when he would be subject, among other things, to the dangers of the vehicular traffic and in ordering said George Washington (Jack) Nash into the dangerous situation and position under the conditions as herein set forth and as shown by the evidence and as herein more particularly described although the said defendants well knew or should have known of the dangers incident to the crossing of the street so ordered under the then existing conditions of visibility, weather, and general surroundings and the unusual manner by which the business of the Southwestern Motor Carriers, Inc., was thereby being prosecuted, without giving the said George Washington (Jack) Nash warning of such dangers and by the order and presence of the said Russell Williams assured the said George Washington (Jack) Nash that the crossing could be made with safety, but for which negligence and gross disregard for the safety of the said George Washington (Jack) Nash on the part of the said last

defendants, the death of the said George Washington (Jack) Nash would not have occurred."

The evidence adduced at the trial, and concerning which there is no serious dispute, was, substantially, as follows: On February 28, 1942, at approximately 9:30 p. m., plaintiff's intestate went to the bus station in the city of Frederick for the purpose of taking passage on a bus to his home at Thompson's Park. A bus owned by the Southwestern Motor Carriers and driven by Russell Williams had just left the station and plaintiff's intestate was so informed by the agent. The bus leaving, however, had to pass in front of the station on the opposite side of the street, a fact which was known to plaintiff's intestate; thereupon plaintiff's intestate crossed the street and hailed the bus to a stop in the street. Plaintiff's intestate thereupon proceeded to board the bus and tender a dollar bill in payment of the fare to Thompson's Park. The driver informed plaintiff's intestate that he had no change, and that it would be necessary for plaintiff's intestate to either purchase a ticket or to obtain the change with which to pay the fare, and that the bus would wait until he could do either of said things; that thereupon plaintiff's intestate left the bus hurriedly, ran around in front of the bus to cross the street and ran into a truck belonging to the H. J. Jeffries Truck Lines, was struck and mortally wounded in consequence thereof. The bus did not move from the time plaintiff intestate got on until after the accident. Demurrer to the evidence and motion for directed verdict as interposed by the respective defendants were overruled and denied and exceptions were saved thereto. The jury thereupon returned a verdict which exonerated the truck owner and the driver thereof and which held Southwestern Motor Carriers, Inc., its insurance carrier, and driver liable to the plaintiff in the aggregate sum of $6,600. Motion for new trial was heard and overruled, and said defendants appeal.

As grounds for reversal defendants urge a number of specifications of error; the vital and decisive ones, however, are error of the court in overruling the demurrers to the evidence of plaintiff and motions for directed verdict at the conclusion of all of the evidence. The defendants contend that there was no evidence of negligence on their part, and under this contention urge that plaintiff's intestate was not a passenger, and that even if he was, there was no negligence established, and that they were under no duty to warn plaintiff's intestate of ordinary traffic hazards and had no duty to assist him in crossing the street and did not discharge him in a place of danger, and that if the acts of defendants in stopping the bus where they did constituted negligence, it was not the proximate cause of the injury to plaintiff's intestate. It will not be necessary to consider all of the contentions so advanced.

In an action to recover damages for a wrongful death resulting from actionable negligence, the plaintiff must prove, first, that there has been a failure on the part of the defendant to exercise proper care in the performance of some legal duty which defendant owed plaintiff's intestate under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of injury which produced the death. See Lowden v. Friddle, 189 Okla. 415, 117 P. 2d 533. Assuming, without deciding, that plaintiff's intestate, by stopping the bus and getting on it and tendering a bill in payment of the fare to his proposed destination, became a passenger within the rule announced, Fullgraf v. Oklahoma Ry. Co., 188 Okla. 592, 111 P. 2d 1072, the liability of the carrier for an injury to plaintiff's intestate had to be based upon negligence. A carrier is not the insurer of the safety of its passengers against any and all hazards. See Ann. 4 A.L.R. 1500; 31 A.L.R. 1202; 45 A.L.R. 297, 69 A.L.R. 980; 96 A.L.R. 727.

As pointed out in the case of White v. Chappell, 219 N. C. 652, 14 S. E. 2d 843:

"Ordinarily, when the relationship of carrier and passenger is created, it continues until the journey, expressly or impliedly, contracted for has been concluded, unless the passenger sooner terminates or relinquishes his right as such. 13 C.J.S., Carriers, sec. 566, p. 1075; Wallace v. Norfolk Southern R. R., 174 N. C. 171, 93 S. E. 731. In either event, whether the journey so contracted for has been concluded, or sooner terminated or his right thereto relinquished by the passenger, such relationship ordinarily ends when the passenger has alighted from the bus in a place of safety on the street or highway. 13 C.J.S., Carriers, sec. 565, p. 1074; Waldron v. Southwestern Bus Co., 42 Ohio App. 549, 182 N. E. 596; Roden v. Connecticut Co., 113 Conn. 408, 155 A. 721; Lewis v. Pacific Greyhound Lines, 147 Ore. 588, 34 P. 2d 616, 96 A.L.R. 718. Annotations 31 A.L.R. 572, and 96 A.L.R. 727, where cases are assembled. See, also, Cooke v. Elk Coach Line, 7 W. W. Harr., Del. 120, 180 A. 782."

In the case at bar the negligence of the carrier and its driver is said to consist primarily in discharging plaintiff's intestate from the bus in a place of danger, and secondarily in failing to warn him of the hazards of crossing the street at the point where he left the bus. The evidence of plaintiff, however, discloses that the plaintiff's intestate sustained no injury as a result of leaving the bus at the point where it was stopped, but that he left there in safety and did not suffer any injury until after he had passed in front of the bus and into the traffic stream when he was struck and mortally injured by a truck over which the defendant carrier had no control or supervision, and which constituted an ordinary traffic hazard of which plaintiff's intestate was as fully aware as was the driver of the bus. Where a passenger has been discharged in safety from the vehicle of a carrier, the carrier has no duty to warn such passenger against ordinary traffic hazards which he may experience in going from the vehicle across the street as distinguished from going from the vehicle from which the passenger left the vehicle. See Hennessey v. Inter-mountain Transportation Co., 110 Mont. 398, 102 P. 2d 489; Klovedale v. Ohio Public Service Co., 54 Ohio App. 244, 6 N. E. 995; Hensley v. Braden, 262 Ky. 672, 91 S. W. 2d 34; Lewis v. Pacific Greyhound Lines, 147 Ore. 588, 34 P. 2d 616, 96 A.L.R. 718.

The evidence of plaintiff wholly fails to establish any actionable negligence on the part of the defendants Southwestern Motor Carriers, Inc., and its driver, and therefore is insufficient on which to base any recovery in favor of the plaintiff, and for this reason the demurrers of said defendants to the evidence of plaintiff and their motions for directed verdict at the close of all of the evidence should have been sustained.

On account of error of the court in overruling said demurrers and motions, the cause is reversed and remanded, with directions to enter judgment for said defendants.

GIBSON, C.J., HURST. V.C.J., and OSBORN, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur.