The GREYHOUND CORPORATION, a corporation, and Lark Villines, an individual, Plaintiffs in Error,

v.

Margarita GONZALES DE AVILES, Defendant in Error.

No. 40147.

Supreme Court of Oklahoma.

Oct. 8, 1963.

Rehearing Denied April 14, 1964.

Hudson, Hudson, Wheaton, Kyle & Brett, Tulsa, for plaintiffs in error.

Doyle Watson, Drumright, and Berry & Berry, Oklahoma City, for defendant in error.

BERRY, Justice.

The parties here will be referred to as they appeared in the lower court.

Plaintiff, surviving widow and a citizen of Mexico, brought this action in the Superior Court of Creek County, Oklahoma, against defendants, the Greyhound Corporation and its driver, Lark Villines. Plaintiff's petition, briefly summarized, alleged that her deceased husband, Francisco Aviles Alvarado, was a paying passenger on defendants' bus; that he had boarded at Chicago, Illinois, with the intention of returning to his home in Ojuelas, Jalisco, Mexico; that he never arrived at his destination; that he was shot to death while on the bus during its stop in McAlester, Oklahoma; and that her husband's injury and death were proximately and directly caused by the negligent acts of defendants. Plaintiff's petition of some twelve pages contained detailed allegations of the circumstances and events leading up to and including the actual shooting.

Defendants answered by general denial and alleged contributory negligence on the part of deceased and intervening negligence of third party or parties. The matter came on for trial on these issues.

At the trial plaintiff called defendant bus driver who testified that he took over the bus at Tulsa, Oklahoma, with the passengers who had proceeded that far from Chicago; that deceased was a passenger; that the "run" originated in Chicago and terminated at Laredo, Texas; that plaintiff's decedent was a passenger and had a ticket; and that he reached the town of McAlester, Oklahoma, but did not go beyond that day.

Plaintiff then presented, by deposition, the testimony of an executive of deceased's employer who testified to deceased's employment record and earnings; the testimony of the supervisor of dock operations who testified to the good working habits

and physical condition of deceased and the testimony of an executive of deceased's previous employer who testified to deceased's earnings, social security number and number of dependents. Plaintiff then entered into evidence two pictures of a dead man lying on a slab in a morgue showing two bullet punctures in his chest over his heart and blood stains on his clothing. These exhibits were identified as pictures of deceased. Plaintiff's fifth witness, also by deposition, was a passenger on the bus who testified in substance that he remembered the bus reaching McAlester, Oklahoma; that he heard no commotion on the bus prior to the shooting; that he saw "two cops" coming toward the bus; that the bus driver led them into the bus; that he knew they were there inside the bus although he wasn't watching them; that he had never seen the deceased until he (the passenger) walked past deceased to get off the bus and that he was dead or shot.

Plaintiff then took the stand herself and, through an interpreter, testified that she was deceased's widow; that he died in McAlester, Oklahoma; that they had seven children; that deceased worked in the United States 7 or 8 months out of each year and spent the other time with his family in Mexico; that he sent $150.00 to $250.00 home each month when he worked in the United States; that he earned money trading at home; that he was a good family man and supported his family. Plaintiff further introduced an inventory of the personal effects found on deceased, including 200 pesos; $660.00 in travelers checks; United States money totaling $15.80; a watch and his social security card. She further testified that he was healthy, without deformity and was traveling between Chicago and Ojuelas, Mexico, so as to spend Christmas and New Year with his family. Plaintiff's testimony was corroborated in the main by her eldest son, the final witness.

Plaintiff then introduced by stipulation that decedent was 39 years of age at his death and had a normal life expectancy of 30.08 years, and rested.

Defendants demurred separately to plaintiff's evidence and moved for a directed verdict. The demurrers were overruled by the trial court. Defendants introduced no evidence and the cause was submitted by the trial court to the jury who returned a verdict for plaintiff. After defendants' motion for new trial was overruled, they lodged this appeal.

Defendants contend here in substance that there are no facts in this record which would impose legal liability upon them, and cite 10 Am.Jur. 157–158 which states, inter alia, the general rule, i. e.: " * * * A carrier of passengers is not responsible for an injury caused by an unforeseen accident against which human care and foresight could not guard and which is not caused in any degree by acts of negligence. * * * Nor will it be liable for injuries arising from the acts of strangers or fellow passengers over whom the carrier has no control, and whose actions are not reasonably to be expected" as authority.

■ Defendants urge error under three propositions. Proposition I states: "Carrier of persons for hire owes passengers the highest degree of care, but is not an insurer of passengers against all hazards, and liability for injury must be based solely upon negligence."

To our minds this is a correct statement of the law and we have so held. See Syllabus 2 of Southwestern Motor Carriers v. Nash, 195 Okl. 604, 159 P.2d 745.

■ Defendants' Proposition II states: "There is a complete lack of evidence of primary negligence or breach of duty on the part of defendants" and urges that the trial court therefore erred when it overruled defendants' demurrers to the evidence and motion for directed verdict. In support of this proposition, defendants cite Kingkade Hotel Co. v. Keggin, 208 Okl. 464, 257 P.2d 504, wherein we held in Syllabus 1 that:

"In all actions the plaintiff, to recover against the defendant, must prove not only that a wrong has been committed

against him, but that the defendant committed the wrong or is responsible for it."

This, too, is a correct statement of the law.

Defendants further urge under their Proposition II the case of Mohawk Drilling Co. v. McCullough Tool Co. (10th Cir.), Okl., 271 F.2d 627, wherein that court, after reviewing the law of Oklahoma, held that:

"Under the Oklahoma decisions the fact that an accident happened and an injury resulted therefrom does not create a presumption of negligence, in the absence of facts and circumstances which warrant the application of the doctrine of res ipsa loquitur."

█ In the instant case we are governed by the rules applicable to civil actions generally. 60 C.J.S. Motor Vehicles § 167. That is, in considering the trial court's action on defendants' demurrer to the evidence and motion for new trial, we will consider the facts and circumstances and the reasonable inferences to be drawn therefrom in the light most favorable to plaintiff's theory of the case in order to determine the question of defendants' negligence (and other issues involved in the case) and apply the well-established rule that in an action of legal cognizance, tried to a jury, the jury's verdict and judgment based thereon will not be set aside if there is any evidence or inferences to be drawn therefrom, reasonably tending to sustain it. See Hembree v. Southard, Okl., 339 P.2d 771.

In our opinion the evidence in the instant case shows this and no more: Plaintiff's decedent bought a Greyhound ticket in Chicago and boarded the bus to go to a point in Mexico. He rode as a fare-paying passenger to McAlester, Oklahoma. Witness David Rogers boarded this same bus at Tulsa, Oklahoma, to go to Dallas, Texas. After the bus stopped at McAlester, Rogers saw the bus driver get on the bus with two policemen. Throughout the trip from Tulsa to McAlester, and after arriving at Mc-Alester, Rogers noticed no commotion. He didn't hear anything. He never saw the deceased until he walked past him to get off the bus. Rogers heard a shot. When he got off the bus, deceased was either dead or wounded.

█ Plaintiff theorizes on this appeal, that an inference of negligence by defendants is created by evidence which showed (1) that the bus driver boarded the bus with two police officers; (2) that thereafter shots were fired; and (3) that deceased died of bullet wounds. Plaintiff urges that this inference of negligence was the proximate cause of deceased's death. This theory gives rise to the highest speculation and requires an inference upon an inference. To sustain such, we must infer that the bus driver sought out the police officers, told them an inflammatory story, which caused them to enter the bus with an extremely cautious and apprehensive attitude toward deceased. From the record here, we cannot find evidence to create such an inference. Deceased had caused no disturbance and no words had passed between the bus driver and decedent. To our minds a more reasonable inference is that the police officers were looking through that bus, as well as other busses, for an individual "wanted" by the authorities. It is just possible that deceased could have been of the same general description as the wanted person.

Many other speculations arise. Suffice it to say, we cannot sift from this record, based on the evidence or any inferences therefrom, the violation of any duty owed to deceased by defendants. Nor can we, from this record, determine or detect any foreseeability from the inferences most favorable to plaintiff that any act of the bus driver was the proximate cause of the death of deceased.

We cannot say that defendants are under a duty to anticipate and foresee that the police officers would do more than that which was legal and proper.

We have pointed out before that plaintiff's petition alleged many details of the events leading up to and including the shooting. But the record is completely lacking of any evidence to support these allegations. Under such a state of facts innumerable possibilities suggest themselves.

Under these circumstances it is plain to us that in order for the jury to find these defendants guilty of primary negligence, it was necessary for it to speculate as to the presence of the "cops", the events leading up to deceased's injury, and the part, if any, played by defendants.

 We said in Southwestern Greyhound Lines v. Smith, Okl., 277 P.2d 157 that:

> " 'An inference of negligence must be based upon something other than mere conjecture or speculation, and it is not sufficient to introduce evidence of a state of facts simply consistent with or indicating a mere possibility, or which suggests with equal force and leaves fully as reasonable an inference of the nonexistence of negligence. The inference of negligence must be the more probable and more reasonable inference to be drawn from the evidence.' "

That this unfortunate occurrence resulted in injury to plaintiff's decedent is unquestioned. However, there is a complete lack of evidence of primary negligence on the part of defendants. Only by conjecture and speculation could the jury have found any connection between the injury and any act or omission upon the part of defendants. We, therefore, apply the rule in Lawson v. Anderson & Kerr Drilling Co., 184 Okl. 107, 84 P.2d 1104, 1105, that:

> "Evidence which makes it necessary to speculate as to what caused an accident is not sufficient to withstand a demurrer and take the issue of negligence to the jury for determination."

Judgment is reversed and the case remanded with instructions to sustain defendants' demurrer to plaintiff's evidence and enter judgment dismissing the action.

HALLEY, V. C. J., and DAVISON, JOHNSON, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, C. J., and WILLIAMS, J., dissent.