Argued June 6; reargued June 29; reversed July 24, 1934

# LEWIS *v.* PACIFIC GREYHOUND LINES, INC.

(34 P. (2d) 616)

*Frank C. Howell,* of Portland (Wilbur, Beckett, Howell & Oppenheimer, of Portland, and W. W. McKinney, of Salem, on the brief), for appellant.

*W. C. Winslow,* of Salem, for respondent.

BELT, J. The Pacific Greyhound Lines Inc. is engaged in the operation of motor busses as a common carrier of passengers for hire. On the evening of January 10, 1933, the plaintiff, a young man 28 years of age, purchased from the defendant company a ticket from Woodburn, Oregon, to Hubbard, about four miles north on the Pacific highway. The plaintiff arrived at his destination at about 5:30 p. m. On leaving the stage he started walking in a westerly direction across the highway. Upon reaching about the center thereof he was struck by an automobile driven by the defendant Keen, traveling towards the south.

The plaintiff alleges that the defendant stage company maintains a depot and depot grounds at Hubbard immediately adjacent to the Pacific highway, which is used for receiving and discharging passengers. The specific charges of negligence against the stage company are as follows:

"(a) That said defendant stage company carelessly and negligently stopped its stage on the paved portion of said highway and discharged plaintiff as such passenger thereon.

"(b) That said defendant stage company carelessly and negligently discharged plaintiff as such passenger upon said East side of said pavement when it was visible to the driver of said bus that other vehicles were approaching said place, including the vehicle being operated by defendant, Keen, without giving said plaintiff any warning, notice, or information

as to the approach of said vehicle to said place where said defendant stage company was discharging plaintiff as such passenger and at the time it was dark.

"(c) That said defendant stage company carelessly and negligently discharged plaintiff as such passenger there and upon a highly dangerous place, to-wit, upon the paved portion of said Pacific highway when said Pacific highway was being used by other vehicles approaching from both directions and at a place where it was necessary for plaintiff to cross said highway in order to reach and enter defendants said depot and his destination.

"(d) That said defendant stage company carelessly and negligently failed to carry plaintiff to his destination, to-wit, to said platform adjacent to said depot and on the west side of said highway, and failed to carry and convey said plaintiff to a safe place."

The specifications of negligence against the defendant Keen will not be set forth in view of the fact that a judgment of involuntary nonsuit was granted in his favor, from which no appeal has been taken.

The defendant company denies the charges of negligence and, as an affirmative defense, alleges in substance that it discharged the plaintiff as a passenger at a safe place in that the bus was driven off the hard surfaced pavement to the right; that after the plaintiff left the bus he walked to the rear thereof and proceeded to cross the highway without looking or paying any attention to the traffic and in particular to the automobile driven by defendant Keen; and that if any injuries were sustained they are the result of his own negligence and carelessness.

Plaintiff denied this affirmative defense in his reply.

On these issues, briefly stated, the cause was submitted to a jury and a verdict returned in favor of the plaintiff for $2,600. The defendant company appeals.

The motions for nonsuit and directed verdict present the vital questions, (1) Is there any evidence tending to show negligence on the part of the defendant company and, if so, was such negligence the proximate cause of plaintiff's injuries? (2) Does the evidence show that plaintiff, in crossing the highway, was guilty of contributory negligence as a matter of law? These questions will be considered in the order stated.

 Negligence is bottomed on a breach of duty. It is fundamental that so long as the relationship of passenger and carrier existed, it was incumbent upon the defendant company to exercise the highest degree of care in promoting the safety of the plaintiff. We take it, therefore, that it was the duty of the defendant to discharge plaintiff as a passenger at a place of safety. It would not be fulfilling its obligations to discharge him at a place where he would be subjected to unusual danger from vehicular traffic, but it is equally well settled that, after having afforded a reasonable opportunity to alight in safety, the carrier is not liable for injuries resulting from intervening causes.

In consideration of the liability of the defendant company, we need not be concerned with railroad or street car cases where passengers have been injured. The automobile bus operating as a common carrier of passengers for hire is subject to rules of law not applicable to other carriers. It does not necessarily follow, therefore, that what might constitute negligence in the discharge of a passenger by a railroad company or a street car company would be a breach of duty in the instant case. A railroad company ordinarily owns its right of way and has exclusive control over its station and grounds where passengers are received or discharged. In such cases the relation of passenger and carrier continues after the passenger has alighted

from the train and while he remains for a reasonable length of time in the station of the carrier: 4 R. C. L. 1045, citing numerous authorities in support of the text. A different rule applies to street car company carriers since ordinarily they do not maintain stations but discharge or receive passengers on the streets. Unlike the auto bus the street car runs upon fixed tracks and must stop on such tracks. Under ordinary circumstances, when a passenger is discharged safely upon the street the liability of such carrier for injuries ceases. An automobile bus is able to move or stop in the street at the will of the driver. Ordinarily stations are not maintained by such carriers. The safety of the place afforded the passenger for alighting is entirely within the control of the driver, and passengers are discharged to suit their convenience. The degree of care to be exercised must be commensurate with the danger involved. To discharge a passenger on a highway where he would be subject to the dangers of vehicular traffic would clearly not meet the degree of care which the law exacts. As stated in *Roden v. The Connecticut Company*, 113 Conn. 408 (155 Atl. 721):

"The duty of a common carrier of passengers includes an obligation to furnish them a safe place in which to alight, as far as that place is provided by it or is affected or conditioned by the movement of the vehicle, and that duty is only satisfied if it exercises the highest degree of care and skill which reasonably may be expected of intelligent and prudent persons engaged in such a business, in view of the instrumentalities employed and the dangers naturally to be apprehended."

In the instant case the evidence discloses without contradiction that the plaintiff was not injured while

engaged in alighting from the bus. It also appears without conflict that he was discharged as a passenger on the right side of the bus. He went out the front door onto the gravel shoulder of the pavement. The left wheels of the bus were only a foot or two on the east side of the pavement. After having thus alighted in safety, did the relationship of carrier and passenger continue while he walked 35 feet to the rear of the bus and half way across the pavement which was 16 feet wide? We think not. Unquestionably the plaintiff walked from a place of safety into a place of danger. Cases where passengers were injured while engaged in the act of alighting or where they have been discharged onto the pavement thereby being subjected to the dangers of traffic are not in point. No case has been cited, based upon a similar state of fact, where liability has been sustained. To hold otherwise would make the carrier an insurer.

We are not unmindful that the bus company usually discharged passengers on the fill in front of the restaurant on the west side of the pavement. In this restaurant the company maintained an agency for the sale of tickets on commission. On the front of the barbecue stand or restaurant was a sign, ''Pacific Greyhound Lines Depot''. The bus company, however, had no control over the ground between the restaurant and the highway. It was used by the public generally. The defendant company excused its failure to drive in front of the restaurant on the ground that there were cars parked on the fill and that loose gravel was piled on the shoulders of the west side of the pavement. It is believed, however, that there is evidence tending to show that the bus could have been driven over onto the fill had the driver desired to do so. We attach no particular significance to these facts in de-

termining whether the relationship of passenger and carrier had terminated at time of injury.

*Waldron v. Southwestern Bus Co.*, 42 Ohio App. 549 (182 N. E. 596), is based upon a similar state of facts and strongly supports the contention of the defendant appellant. In that case the bus had a regular stopping place just before crossing an intersecting road but, on the day in question, failed to stop at the usual place and continued until it had crossed the intersecting road. The driver thereupon opened the bus door for the plaintiff therein and she alighted close to the edge of the pavement and in safety. She then walked to the rear of the bus and, after waiting for a number of automobiles to pass, started across the road and was struck by an automobile. The court, in denying liability on the part of the bus company, said:

"The defendant company, while she was a passenger, owed her a high degree of care for her safety, but she alighted from the bus in a place of safety and the relation of carrier and passenger thereupon terminated. The proximate cause of her subsequent injury was either her own negligence in walking in front of an approaching automobile, or the negligence of the operator of such automobile, and the defendant was in no sense responsible for the injury resulting therefrom. Having discharged the passenger in a place of safety, there could be no causal connection between that act and the injury which she suffered. She was familiar with the surrounding conditions, and the operator of the bus owed no duty to warn her of approaching automobiles."

Plaintiff herein undertakes to distinguish this case in that in the present action the plaintiff was unfamiliar with the surroundings and that the accident occurred when it was dark. We think, however, that such facts do not overcome the principle as declared

by the Ohio court that the relationship of passenger and carrier terminated when the former alighted at a place of safety.

In *Cleveland Ry. Co. v. Crooks*, 125 Ohio St. 280 (181 N. E. 102), the defendant was held liable for negligence in discharging a passenger at a place on the street about ten feet from the curb. He was struck by a motor vehicle which undertook to pass to the right of the bus. The distinction between this case and the one above cited is plain. In the latter case the passenger was not discharged at a place of safety, for, as the court said:

"The safe and sane point for the stoppage of a motorbus, whether the stop be regular or irregular, is at the curb, where there can be no danger to the passenger who is alighting from vehicular traffic."

Respondent places much reliance upon *Roden v. Connecticut Co.*, supra. In our opinion, it does not support the contention of liability. In that case the plaintiff, a boy seven years of age, who was a passenger on the bus operated by the defendant company, was discharged at a place about in the center of the pavement, after the bus had been driven over to the left side of the highway. The only door to the bus was on its right side and, as the boy undertook to alight to go to his home on the opposite side of the street, he was struck by an automobile proceeding in the same direction as the bus, but which was being driven on the right side of the highway. In that case the court said the jury "could have found that the plaintiff was struck almost as soon as he reached the street". The basis for the decision was that the carrier had breached its duty in failing to afford this boy of tender years a safe place in which to alight.

We note this significant language in the opinion:

"When, however, the duty of the carrier to provide a safe place to alight has been fulfilled and the passenger has left the vehicle it ceases to owe to him any duty other than that which it owes to any person coming within the range of its activities, not to do him injury by a failure to exercise reasonable care."

We see no need for reviewing the remaining cases cited both by respondent and appellant as, being based upon fact situations so different from the one under consideration, they are not in point.

■ Assuming, but not conceding, that the defendant bus company was negligent in failing to discharge the plaintiff as a passenger on the west side of the highway in front of the restaurant or barbecue stand, it is believed that such negligence has no causal connection with the injury sustained. With all deference to those who are of a different opinion, we can reach but one conclusion, viz., that the proximate cause of the injuries of which plaintiff complains was either the negligence of the driver of the car which struck him or his own negligence in failing to exercise due care to avoid being injured while undertaking to cross the highway.

■ In our opinion, the plaintiff was guilty of contributory negligence as a matter of law. He was not wholly unfamiliar with the surroundings as he had purchased a ticket at Hubbard from the restaurant in question prior to the day of his injury. He says that he saw the lights of the stage depot before he left the bus when it stopped at Hubbard and that, after he walked around to the rear of the bus, he again saw one of the depot lights only about forty feet distant. He admits that he did not pay any attention to vehicular traffic because, as he says, he thought that he was on the west side of the pavement. On direct ex-

amination, in answer to the question, "Could you tell when you came around behind the bus, there, which side of the pavement you were on, whether on the east or the west side?" plaintiff answered, "I never paid any attention, I know it was a broad place in the road and I could see pretty plain out east there and I never looked particularly for the pavement or anything, I just walked fast, I was in a hurry, right toward the depot." Relative to the degree of care which the plaintiff exercised, also witness the following portions of the record:

"Q. And when you got around behind the bus you saw the pavement was in front of you, did you not? A. No, I didn't look.

"Q. You didn't look? A. I figured—I wasn't looking for any cars between me and the depot, is the reason I didn't look.

\* \* \* \* \*

"Q. In other words, you didn't know whether you were on the gravel or on the pavement until you were hit? A. No. I didn't see the road much at all there. I didn't pay much attention to it.

"Q. Then you didn't look to see whether you were crossing the highway or not, did you? A. I didn't look to see whether I was crossing the highway?

"Q. If you were crossing the highway? A. No, I did not.

\* \* \* \* \*

"Q. You knew then you were on the pavement, didn't you? A. Well, not exactly, I didn't pay enough attention to it.

\* \* \* \* \*

"Q. You knew where the barbecue was when you got out, then? A. I knew about, I thought I knew about, from seeing the lights.

\* \* \* \* \*

"Q. And you thought you were on the paved portion of the highway, is that right? A. Well, I didn't

know, to tell the truth about it, I didn't know where I was but I thought I was close to the depot where I had got on before, pretty much the same.

"Q. Couldn't you tell from the distance, or did you look? A. Well, I didn't look, I come right out from behind the bus and I didn't look until I got hit, I didn't have time.

"Q. You didn't look toward the north to see whether there was a car coming or not? A. No, I didn't."

In the light of this record, can it be said that the plaintiff exercised that degree of care that an ordinarily prudent person would have exercised under the same circumstances? It seems to us that the answer is obvious. The physical facts are against the plaintiff. The lights of the oncoming automobile which struck the plaintiff, and which he said he did not see until it was about ten or fifteen feet from him, certainly would have been reflected on the pavement. He is forced into the dilemma of either not having exercised his senses to avoid injury or, having seen the approaching automobile, of undertaking to cross the highway in front of the same.

Mr. J. F. Ulrich, a disinterested witness, was driving his automobile closely following the bus when it stopped to discharge its passenger and saw the plaintiff when he was struck by the automobile driven by Mr. Keen. He rendered first aid to the plaintiff. In asking him about the accident, he said, "How did that happen? Didn't you see the car?" According to the testimony of Ulrich, plaintiff said to him in response to these questions, "Well, I thought I could beat it across." Plaintiff, however, denied having made such a statement.

It is believed that there is no reasonable basis for the conclusion which the jury reached in this case and

that the trial court erred in not directing a verdict in favor of the defendant.

It follows that the judgment is reversed and the action is dismissed.

RAND, C. J., and ROSSMAN and BAILEY, JJ., concur.

KELLY, J. (dissenting). Defendant is a public carrier of passengers for hire, operating an auto stage line generally throughout the state of Oregon. On January 10, 1933, plaintiff purchased a ticket at Woodburn for passage from that place to Hubbard. At approximately 5:15 p. m. of said day, at Hubbard, defendant stopped its auto stage, upon which plaintiff was riding as a passenger, at a point on the easterly side of the highway. Defendant's usual stopping point at Hubbard was in front of its ticket office, which is upon the westerly side of the highway opposite to the point at which its stage was stopped on the occasion in suit. It was dark when plaintiff alighted from defendant's stage. On the previous day, plaintiff had taken one of defendant's stages at Hubbard for passage to Woodburn, and on that occasion defendant's stage had stopped in front of its ticket office at Hubbard on the westerly side of the highway.

The record discloses a disclaimer on the part of defendant with reference to any control either for the purpose of a depot or for depot grounds over the premises where its tickets are sold. Therefore, the writer does not assume that its usual stopping place at Hubbard was under its control for such purposes. The question is confined to the probable effect on a reasonably prudent person of the course taken by the defendant on the day prior to the accident in suit, in

selling him a ticket at that place, in stopping there to receive plaintiff as a passenger, and in stopping across the street therefrom on the night of the accident and discharging plaintiff in the dark without any warning, as plaintiff claims, of its having stopped at a different place than on the day before, and where it was necessary for plaintiff to cross a publicly traveled highway.

We cannot concur with defendent, however, in its contention that the jury should have been instructed that there was no evidence that defendant's stage lines had any control over the premises or grounds where the tickets were sold. Use of the grounds by defendant, as well as the display of defendant's advertising sign and the sale of tickets, are circumstances which the jury had a right to consider in that regard.

Plaintiff says that on the evening of the accident, as he left defendant's stage, he thought that it had stopped immediately in front of said ticket office.

Plaintiff walked to the rear of defendant's stage, turned, passed the rear thereof, and, in attempting to proceed further, was struck and injured by an automobile then being driven southerly on the public highway by one William J. Keen.

Errors are assigned in the refusal of the trial court to grant defendant's motions for involuntary nonsuit, and for a directed verdict in favor of defendant, and also in the refusal to give, and in the modification of, certain instructions.

In support of defendant's motions for nonsuit and directed verdict, it is argued that the relationship of passenger and carrier terminated when plaintiff alighted upon the ground where defendant's auto stage had stopped; that thereafter the only duty defendant owed plaintiff was that of ordinary care; and no breach

of such duty was shown. In support of the course taken by the trial court in denying said motion, it is argued that defendant did not discharge plaintiff from its auto stage in a safe place, and that the duty of a carrier of passengers for hire toward such passengers continues until they are so discharged.

The question thus presented is whether we can declare, as a matter of law, that the duty owing by a carrier to its passengers to exercise the highest possible degree of care for their safety has been performed by defendant when plaintiff is permitted to alight in the dark by the roadside at a place across a publicly traveled highway from the ticket office of defendant where on the day previous he had been permitted to enter another of defendant's stages, and where plaintiff was not warned notified nor advised that he would have to cross the highway to reach the usual stopping place.

The driver of the stage says that, pursuant to a rule of the company requiring him to do so, he told plaintiff to watch his step. Plaintiff says that he did not hear any statement at all by the driver. A witness, called by defendant, recounted the circumstances attendant upon plaintiff leaving the stage, but did not relate that any such warning was given by the driver. Whether such or any warning was given became a question of fact. The writer thinks that the failure, if any, on the part of the driver to give such warning would be evidence tending to show negligence on the driver's part.

As to what constitutes a compliance by a carrier with the duty to observe the highest degree of care for the safety of its passengers, each case must depend upon its own facts and circumstances. While the writer thinks that in the case at bar there is evidence tending to disclose that defendant did not exercise such a

degree of care toward plaintiff in reference to the place of his discharge from the stage and the circumstances attending it, yet he would not hold, as a matter of law, that a compliance with that duty requires the carrier in all cases to warn its passengers of the presence of traffic dangers and perils. If, obviously and manifestly, they are known to the carrier and not known to, nor by reasonable diligence discoverable by, the passenger, such warning should be given. The writer thinks that in the case at bar no error was committed by the trial judge in submitting that question to the jury.

Defendant cites *Smith v. City Railway Co.*, 29 Or. 539 (46 P. 136). There, the defendant was operating an electric railway system in Portland. The accident occurred in the daytime. The plaintiff was injured by a car going east, as she attempted to cross the railway track on the south side of Morrison street, after having alighted from and walked around the rear of a car which had stopped on its westerly course and was upon the track on the north side of said street. The facts of that case differ so widely from those of the case at bar that we deem it inapplicable.

Defendant also cites *Finseth v. Suburban Railway Co.*, 32 Or. 1 (51 P. 84, 39 L. R. A. 517). In that case, this court held that where defendant, a street railway company, had erected a temporary sidewalk over a flooded street for the use of its passengers in going from one car to another, it was error to instruct the jury that defendant was bound to construct said passageway in a manner as reasonably safe as possible. It was held that the use of the last two words in the preceding sentence carried the liability of the street railway company too far for the reason that when a passenger on a street railway steps from a car upon

the street he becomes a traveler upon the highway. The court there stress the distinction between that case and the case at bar by saying:

"In the very nature of things, such a carrier (a street railway company) can have no stations, * * * and hence, when operating its cars within the limits of a city or town, it must receive its passengers from, and discharge them in, a public street."

The defendant in the case at bar maintains stations at least to the extent of selling tickets for passage from one such station to another.

*Finlayson v. Bryan,* 56 N. D. 407 (217 N. W. 662), also cited by defendant, is a case where it is held that it was not negligence on the part of defendant to have a lap robe in its auto or taxicab.

*Waldron v. Southwestern Bus Company,* 42 Ohio App. 549 (182 N. E. 596), also cited by defendant, is distinguishable from the case at bar in that there plaintiff was a passenger in the daytime, while in the case at bar the accident occurred in the dark of the evening; and there is a further distinction between the two cases, because in the Ohio case plaintiff stopped and waited for a number of automobiles to pass before making the attempt to cross the street which attempt resulted in her being struck and injured by a west-bound automobile. The facts there clearly show that plaintiff was fully aware that she was about to cross a public highway. In the case at bar, the crucial question was whether plaintiff knew, or in the exercise of ordinary care should have known, that he was crossing a public highway when he was injured.

The case of *Hudnut v. Indiana DeLuxe Cab Co.,* 182 N. E. 711, also cited by defendant, is one wherein plaintiff engaged one of defendant's taxicabs to transport her from one place to another in the city of South

Bend. The driver urged plaintiff to alight by jumping from the running board of the taxicab to the curb. This, plaintiff attempted to do, but fell and was injured. The court say:

"With full knowledge of the surroundings and hazards confronting her, and after discussing with the driver, the possibility of successfully alighting upon the sidewalk in that manner, the appellant attempted to jump from the taxicab to the sidewalk and was injured."

In the case at bar, the learned trial judge instructed the jury that if they should find that plaintiff, when he alighted, knew, or by the exercise of reasonable care should have known, that he was on the east side of the highway and would have to cross the highway to reach his destination, then their verdict should be for the defendant.

In further support of the motions for nonsuit and directed verdict, it is argued that plaintiff was guilty of contributory negligence. In the opinion of the writer, that was a matter of fact. The plaintiff claims that he thought, when he left the stage, he needed only to pass around the rear thereof in order to enter the ticket office and reach a telephone there by means of which he intended to telephone to his employer.

This is a case of a passenger, who, on the day before the accident in suit, had seen defendant's stage stop in front of the ticket office and on its side of the highway to accommodate passengers. Whether such passenger, when discharged in the dark from another of such stages, would in the exercise of reasonable prudence believe that he had been discharged at the same place, and whether, under those circumstances, in leaving the stage he was negligent in not being on guard and in not looking out for traffic, are questions of fact

which the jury should decide. That was the view taken by the learned trial judge and the writer concurs in it.

The writer has examined the requested instructions, which were refused and those which were modified, and finds no error in the course taken by the trial court in that regard.

It was suggested, on oral argument, that the trial judge failed to give the statutory instruction,—

"That in civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory, the finding shall be according to the preponderance of evidence." Subdiv. 5, section 9-2001, Oregon Code 1930.

We find in the charge of the court the following language:

"This being a civil case, the affirmative of the issue must be proved and when the evidence is contradictory, your verdict must be in accordance with the preponderance of the evidence."

Believing that there is no reversible error, the writer thinks that the judgment of the circuit court should be affirmed.

BEAN and CAMPBELL, JJ., concur in this dissent.