## BEESON v. TRI-STATE TRANSIT CO. OF LOUISIANA, Inc.

### No. 11011.

Circuit Court of Appeals, Fifth Circuit.

Jan. 18, 1945.

Rehearing Denied Feb. 26, 1945.

Ross R. Barnett, of Jackson, Miss., for appellant.

Hubert S. Lipscomb, of Jackson, Miss., and T. P. Brady, of Brookhaven, Miss., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judges.

Suing as administrator, appellant brought these suits against appellee and another, who did not appeal, for the damages resulting in the deaths of his wife and child. The claim was that the decedents, while attempting to cross the highway, after alighting on the north side of it from one of appellee's busses, were struck and killed by a passing automobile. The defense was that the decedents, accompanied by plaintiff, had been safely discharged from the bus on the north side of the road, opposite their home, the place where they had asked to get off, and that if their deaths were the result of fault on the part of anyone but themselves, such fault was not that of the bus company but of the driver of the automobile which struck them. There was some confusion and contradiction as to some of the details of the occurrence as testified to by plaintiff, the main witness in the case, particularly as to when, in reference to their progress across the road, plaintiff or his wife first saw the cars, one of which struck them. But as concerns matters material to the case and defense, the evidence was without substantial conflict.[1]

---

[1] The accident occurred on the Brookhaven-Monticello paved highway No. 84, at a point approximately midway between the two towns. The highway runs east and west and is straight for quite a distance both ways from the point where the accident occurred. The road is on an embankment at approximately 10, 12 or 13 feet above its right-of-way edge. The paved slab is about 20 feet wide. The paved slab has a metal tab guard rail on both sides of the road. The tops of the posts are 2 feet higher than the shoulder, and it is about 12 or 14 inches from the top of the metal to the ground.

The accident occurred between two bridges, one of them being the Fair River Bridge, to the west, and the other a bridge over a small creek to the East. The distance between the edge of the paved portion of the road and the guard rail is 3 feet. The posts are roughly 8 feet apart. The guard rail on each side of the road is a continuous metal strip, and, as said, is on both sides of the paved slab, except at the bridges, where there are concrete guard rails across the bridges and the metal guard rail picks up on the other side of the bridge. The guard rail posts are about 2 feet high,

At the conclusion of plaintiff's evidence, defendant moved for, and was granted, a directed verdict. Plaintiff is here insisting that his evidence made out a case for the jury upon whether the driver of the bus was negligent either in not driving the bus onto the shoulder and permitting the passengers to alight on it and not on the pavement, or in not traveling further on to the intersection of the paved highway with the gravel road, or in not warning the passengers of the automobiles approaching,

and the metal sticks up to about 12 inches from the top of the post. The inside clearance or roadway section of the bridge crossing the creek is 24 feet. The bridge is what you would call a 24 foot bridge. The bridge over the small creek is approximately 36 feet in length. It is about 707 feet from the west end of the bridge over the small creek to the center of the field road. The small creek bridge lies east of the scene of the accident, and the field road lies west of the scene of the accident. The field or gravel road leads off of the north side of the highway. Monticello is to the east, and Brookhaven is to the west.

Plaintiff testified: That at Monticello they got bus tickets for Fair Oak Springs, a bus stop about 2½ or 3 miles west of their home. "When we came to the little creek just before we got to Fair River. Just as we got to the bridge my wife was sitting on the seat near the driver." "She said, 'As soon as you get over the little bridge, we want to get off; there is a path that leads down to the house.'" That the bridge she was talking about was a little pavement bridge, a cement bridge about 20 feet wide. Q. "What happened after you crossed the bridge?" A. "As soon as he could stop, he stopped, after he went over the bridge." That where he stopped there was a fill about 10 feet with an iron railing along both sides of it. The bus stopped with all four wheels on the pavement, the guard was over about 2 feet off the paved highway. When the bus stopped, that his wife got off first, carrying the two year old child. After she stepped off, that he stepped off. From the running board to the edge of the pavement was about a foot or a foot and a half to the edge of the gravel. When they got off they made about one step on the pavement. After plaintiff stepped off, the bus started to move on in a westerly direction. Then they started across the pavement. They were on the north, they lived on the south side about a quarter of a mile away. As they started to walk across, plaintiff saw another car coming in from Monticello about 10 or 15 feet from them it looked to be. The car was running about 40 miles per hour at the time. They were about in the center. He said he knew they were in danger there, and he tried to rush

over to the south side, and then he saw the lights of another one, 10 or 15 feet away. That he said, 'Look out, Hon., there is a car.' He jumped out of the way south and got off the pavement. The car "struck my wife and knocked her down", and when it hit her she was just past the center on the south side.

On cross examination, plaintiff testified: that you could see all the way from the crest of the hill west of the Fair River bridge about a mile; that the road was straight and pretty level; and that there was nothing to obstruct his vision; and also that he had said in a deposition that when he first saw the car coming from Monticello it was a pretty good distance off. It must have been a quarter of a mile if not farther. That the Leverett car which struck his wife was coming between 60 and 70 miles per hour. That the shoulder was about two feet wide, and when he stepped off, he did not stop but moved over against the guard rail for the bus to move on out of the way. *That he and his wife were backed up against the guard rail waiting for the bus to get out of the way and that as soon as it moved, they started walking back toward Monticello.* When they stepped off the bus, they did not start walking back east toward Monticello until the bus had moved out of the way. They just backed against the guard rail as close as they could until the bus moved on. They stood right where they stepped off the bus until the bus moved out of the way.

On redirect, he testified that when he stepped off the pavement, the grass was wet, and he stepped back on it. That they then discovered the car coming from Monticello and they started across the highway because they were in danger where they were standing where they stepped off the bus, danger from the car coming from Monticello.

On re-cross-examination, he was asked: "Why did you change your mind over night? Why did you testify yesterday that you never knew the car was coming from Monticello until you got to the center line and your wife called your attention to it, and now you tell the jury, you went to the south side for protection to get out of the way of that car." "I didn't get quite to the white line when the car from Monticello whipped by."

from the west and the east, instead of, as he did do, bringing the bus to a stop, opening the door of the bus and permitting the passengers to alight on the main traveled portion of the highway and remaining silent without giving warning of the approaching perils.

In support of his position, he invokes the well settled general rule of care required of a carrier in receiving a passenger, conveying him to his destination and setting him down as safely as the means of conveyance and the circumstances will permit. Citing many cases, he relies mainly on that of Gulfport & Mississippi Coast Traction Co. v. Raymond, 157 Miss. 439, 128 So. 327, where a passenger on a street car after being carried by her corner, notwithstanding her signal, was allowed to get off in the middle of the street, and immediately after alighting was struck by an oncoming automobile. Appellee, pointing out that the court found liability there because the car was stopped at an unusual and unsafe place, that is in the middle of the street and between intersections, after she had been carried past her corner, insists that that case is without bearing here. We agree. There the court pointed out that as a rule street cars stop to take on and discharge passengers at street corners. Therefore, persons traveling in automobiles are not required to be on the look out for street cars to stop elsewhere to let off or take on passengers. It concludes at page 329 of 128 So.:

"Viewing the evidence in the light most favorable to appellee's case, as should be done in determining the propriety of a directed verdict for the opposite party, appellant was negligent in carrying appellee beyond her destination, and allowing her to get off at a place more dangerous than the place where she was entitled to be dis-charged, without giving her notice, and warning her of such added danger. The question of liability, therefore, was one for the jury, and not for the court."

■ Appellee, on its part, concedes that it was its duty to discharge the plaintiff in a safe place, and that if it failed to do so and plaintiff was injured as the proximate result thereof, it would be liable. It insists, though that no such case is made out here, for plaintiff and decedents were let off, not in, but on the north side of, the road, and if they had gone onto the shoulder and remained there until a safe crossing was assured, they could not have been in danger. Their injuries, therefore, occurred solely and entirely as the result either of their own negligence in crossing the road without first looking out for oncoming vehicles, the negligence of the driver or drivers of these vehicles, or the combined negligence of themselves and the drivers. Citing as directly in point Mississippi City Lines v. Bullock, 194 Miss. 630, 13 So.2d 34, 145 A.L.R. 1199, it stands on that case as completely exonerating it here. Again we agree with appellee. It is well settled in Mississippi that though the bus companies have regular stopping points from and to which fares are calculated, it is the right of a passenger to alight at any place between the points called. for in his ticket which he may designate. Because this is so, and the bus company must discharge the passengers on the highway when and as requested, it is not, it cannot be, a breach of duty for them to discharge a passenger at the place designated by him unless there are dangers in the place chosen, known to defendant and not known to the passenger. If, for instance, a passenger should ask to be let off on a trestle or where there was a dangerous declivity or break on the side of the

---

"You stated a while ago that you had started across to the south for protection from that west bound car and you tell the jury that you never saw it until you got to the center line and your wife called your attention to it." "I didn't mean to do so."

There was testimony as to the distance the bus had gone before the accident, plaintiff saying that he started going across as soon as the back end of the bus passed, others testifying that the bus had gone some distance before the accident occurred. He testified at another place that he and the decedents got off the bus at the front end, walking from the front end of the bus to the back end of it, the bus started moving on, and as soon as the back end of the bus passed they started to go across the highway, and when he got to the white line in the center of the highway, he discovered this car coming from Monticello.

There was evidence that some distance up from where they were let off, about 450 or 500 feet, there was a gravel road or field road that came into the main highway. Plaintiff contends that this was a safe place to alight and that the driver should have traveled on to this point and let them off.

road, or some condition existing at the place selected by him for alighting, which would make it difficult for him to alight with safety, the bus company would not be compelled to let him alight there. But at any place along the road where the only danger would be that arising from the passenger's attempting to cross the road, after he had alighted in a place of safety, the passenger is entitled to select his place of alighting, and the bus company cannot be held negligent in acceding to his request. The evidence shows without dispute: that the driver did exactly as he had been requested to do; that there were no dangers inherent in or lurking about the place of alighting; that plaintiff and the decedents alighted safely and had a safe place to remain standing in until the way was clear for them to cross; that had they remained off the pavement and on the shoulder until they, in the exercise of the proper care incumbent on them, had selected a safe time to cross, no injury could, or would, have occurred. The bus company, having deposited them in a place where they could safely remain, was entitled to assume that they would so remain until it was safe for them to cross. It had discharged its duty to them, and was not in anywise responsible for their misadventure in attempting to cross the highway in their journey to their home. The law governing the situation here has been so well and fully set out in Bullock's case, supra, and in the cases it cites with approval, particularly Lewis v. Pacific Greyhound Lines, 147 Or. 588, 34 P.2d 616, 96 A.L.R. 718, that we content ourselves with referring to them. The judgment was right. It is affirmed.