92 So.2d 723 (1957)
Southerner M. LEWIS
v.
Claude GOODMAN et al.
No. 20618.
Court of Appeal of Louisiana, Orleans.
February 18, 1957.
Rehearing Denied March 11, 1957.
Writ of Certiorari Denied May 6, 1957.
*724 Racivitch, Johnson, Wegmann & Mouledoux, New Orleans, William J. Wegmann, Trial Attorney, New Orleans, for plaintiff-appellant.
Charles E. Deichmann, New Orleans, for Claude Goodman, defendant-appellee.
Christovich & Kearney, New Orleans, for Westside Transit Lines, Inc. and Allen E. Landry, defendants-appellees.
JANVIER, Judge.
In a tragic, though fortunately not fatal, accident which occurred on the afternoon of December 19, 1952, on Patterson Road, which runs alongside the levee just below Algiers on the west bank of the Mississippi River, Cynthia Ann, the young daughter of Mr. and Mrs. Southerner M. Lewis, sustained serious physical injuries as the result of being struck by an automobile owned by Mr. and Mrs. Claude Goodman and operated by Mrs. Goodman on a community errand.
The little girl was seven years and ten months of age at the time. She had been on the river side of the road alongside the front door of a passenger bus of Westside Transit Lines, Inc., which was standing partly on the shoulder of the road, and she intended to cross from that side to her home, which was on the other side of Patterson Road. The bus was facing in an upriver direction, and the little girl entered the road in front of the bus so that it *725 screened her from the view of Mrs. Goodman as she, in her automobile, approached from the rear of the bus. Just as the child emerged from the obstruction to view, which resulted from the presence of the bus, Mrs. Goodman's car passed the bus and the little girl stepped in front of it and sustained the injuries on which this suit is based.
The bus was in charge of Allen E. Landry, an employee of Westside Transit Lines, Inc. Mr. Goodman had secured a policy of liability insurance from Texas Mutual Company which, however, had gone into receivership before that time.
Southerner M. Lewis, the father of the little girl, brought this suit in his own behalf and for her use and benefit against (1) Westside Transit Lines, Inc., (2) Allen E. Landry, the driver of the bus, (3) Mr. and Mrs. Claude Goodman and (4) Wade O. Martin, Jr., as ancillary Receiver of Texas Mutual Insurance Company. He prayed for solidary judgment against all defendants in the sum of $79,982.90. He alleged that Landry, who was in charge of the bus, had been negligent in allowing the little girl, who, though she had not just alighted from the bus, nevertheless, according to plaintiff, still occupied the status of passenger to attempt to cross the road in front of the bus without making sure that it was safe for her to do so and without at least warning her of the danger of crossing. He charges that Mrs. Goodman was negligent in driving her car at an excessive speed; in failing to maintain a proper lookout, and in failing to have her car under proper control.
The Ancillary Receiver excepted to the petition of plaintiff and prayed that the plaintiff be enjoined from proceeding on the ground that the Civil District Court for the Parish of Orleans is without jurisdiction ratione personae since the said Ancillary Receiver is legally domiciled in the Parish of East Baton Rouge, and also on the ground that in the receivership proceedings of the said insurance company there was judgment enjoining anyone from proceeding against the said Receiver without first obtaining permission of the Court of the receivership.
Exceptions of no cause of action were filed by the other defendants and, after these exceptions were referred to the merits, answers were filed on behalf of Landry, the Westside Transit Company and Mr. and Mrs. Goodman. The Transit Company and Landry denied any negligence on the part of Landry, and Mr. and Mrs. Goodman denied any negligence on the part of Mrs. Goodman, and in the alternative, all defendants averred that if there was any negligence on the part of Landry or of Mrs. Goodman, there was contributory negligence on the part of the little girl. Mr. and Mrs. Goodman also alleged that in the event there be negligence shown on the part of Mrs. Goodman, there was also negligence on the part of Landry and that, therefore, any judgment which might be rendered in favor of plaintiff against Mr. and Mrs. Goodman should be rendered also against all defendants solidarily.
There was judgment dismissing the suit against the Ancillary Receiver of Texas Mutual Insurance Company, and, after a trial, there was judgment in favor of all other defendants. Plaintiff has appealed suspensively and devolutively but has made no effort to obtain judgment against the Ancillary Receiver of Texas Mutual Insurance Company.
A clear understanding of the theory on which plaintiff attempts to hold Landry and the Transit Company liable cannot be had without a full comprehension of the rather complicated facts, some of which are in dispute.
The bus was not a school bus. It was a regular unit in the public transportation system of the Transit Company, and in it, as in all other busses of that company, all persons who desired to do so might ride upon payment of the proper fare. In other words, it was a regular common carrier.
*726 However, plaintiff says, and we find no denial of this statement, that "the bus company, to facilitate the handling of child passengers, has a regular coupon system", and argues that for this reason it was in effect a school bus.
The bus in question, on its regular run, had picked up the little girl and her twin brother, a younger brother and a younger sister at or near their school, which was located in Algiers proper. It had proceeded down the river on Patterson Road and had gone about 50 or 60 feet beyond its regularly marked stopping point and had come to a stop just in front of the gateway of the home of these little children and here the children, including Cynthia Ann, alighted. The bus then had gone on to its terminus, which was about one long block farther down the river. When the Lewis children alighted there remained in the bus only the driver and one passenger, Albert M. Otis, who seems to have been just taking a ride and who, therefore, did not get out at the end of the line but remained in the bus to take the return trip to Algiers. Otis noticed that one of the children had left school books in the bus and he called Landry's attention to this. Landry opened one of the books, and, finding that it belonged to one of the Lewis children, and realizing that he knew them all, decided that he would return the books on his upriver trip which he was just about to commence. He turned his bus around and commenced the return trip and almost immediately he noticed Cynthia Ann standing on the riverside of the road near the regular stopping place on that side and just across the road from the gateway to her home. Landry drove his bus alongside the little girl, to the far edge of the road and brought it to a stop with its right side slightly off the paving and its front door just opposite where the child was standing and opened the front door to give the child the books.
There is a dispute over the question of whether the girl got into the bus to get the books, or whether she merely reached in and took them from Landry as he leaned to his right and handed them to her. If she did not get into it, she must have stood very close to it because the bus was eight feet wide and, since the driver did not leave his seat, she must have reached in as far as she could to obtain the books from the hands of Landry.
Landry jokingly asked her: "Do you have a reward for the driver? * * * You know, when we find something, we get a reward." Landry says that she answered: "I don't have any money." And that he then "leaned way out and handed her the books."
During the few moments taken up by this banter, the car driven by Mrs. Goodman was approaching from the rear. After the little girl had obtained the books and had completed the joking conversation with Landry, she started across the road towards her home and in doing so passed in front of the stationary bus and, according to Landry, "ran right across in front of my bus." At another point in his testimony he said that the little girl "darted right across in front of the bus," and a little later he said that she did this with "a half little skip or hop, whatever you call it, like kids do." Mrs. Goodman said: "It seemed like the child just leaped out right in front of me."
The little girl was struck by the automobile and apparently caught by the fender and carried a distance of about 40 feet and was dropped to the surface of the road as Mrs. Goodman swerved her car to its left and brought it to a stop alongside a shed on the left side of the road.
The theory on which counsel for plaintiff attempt to hold the transit company and Landry liable is simply this: That while the bus was not a regular school bus, it was to some extent devoted to the transportation of school children and that the driver should have been extremely careful to see that all such children were not permitted, in entering or leaving such a bus, to place themselves in positions of danger, and it is further argued that the driver must have *727 realized the extreme danger of permitting children to cross or to wander near such a road, and that his realization of this danger is evidenced by the fact that on his downriver trip he had not stopped at the regular stopping point which would have required that the children walk a distance of 50 or 60 feet alongside the road to the gate in front of their home, but instead passed the regular stop and deposited them immediately in front of their own gate.
It is particularly argued that, although the little girl had gotten out of the bus before and had come back merely for the purpose of retrieving her books, she nevertheless retained her status as a passenger and that, therefore, the transit company owed her that high degree of duty which is due to a passenger.
The contention of plaintiff that the little girl retained her status as a passenger and that, therefore, at the time of the accident, the Transit Company owed to her that very high degree of care which a common carrier owes to its passengers is, we think, not well founded.
The child had left the bus on its down-river trip, and, through no fault of the driver, her little brother had forgotten his books on the bus. The usual rule is that when a carrier deposits a passenger at a safe place and the passenger has alighted, the status of passenger comes to an end and that thereafter the duty owed to the former passenger is only the duty of ordinary care.
In Beeson v. Tri-State Transit Co. of Louisiana, 146 F.2d 754, 757, which illustrates the principle, we think applicable, the United States Circuit Court of Appeals for the Fifth Circuit said:
"* * * The bus company, having deposited them in a place where they could remain, was entitled to assume that they would so remain until it was safe for them to cross. It had discharged its duty to them, and was not in anywise responsible for their misadventure in attempting to cross the highway in the journey to their home."
We also find appropriate a decision of the Court of Appeals of Ohio, in Waldron v. Southwestern Bus Company, 42 Ohio App. 549, 182 N.E. 596. There the Court said:
"* * * Having discharged the passenger in a place of safety, there could be no causal connection between that act and the injury which she suffered. She was familiar with the surrounding conditions, and the operator of the bus owed no duty to warn her of approaching automobiles. * * *"
Similarly, in Mississippi City Lines, Inc., v. Bullock, 194 Miss. 630, 13 So.2d 34, 36, 145 A.L.R. 1199, a case in which a young boy was permitted to alight from a bus on a gravel shoulder of a road, although the driver saw a vehicle approaching and did not warn the boy, the Supreme Court of Mississippi said:
"* * * The relation between the carrier and the boy as a passenger was thereupon at an end, and the carrier had the right to assume that the boy would so remain until the bus moved away, as is customarily done by passengers when alighting from buses or street cars. * * *"
We think that the status of passenger had terminated and the fact that the little girl found it necessary to await the return of the bus and to receive the books did not revive that relationship even if the child re-entered the bus to get the books. However, if we are wrong in this conclusion, still we find no liability in the Transit Company for we find no fault whatever of omission or commission on the part of the driver of the bus.
Counsel for plaintiff direct our attention to the decision of the Court of Appeal for the First Circuit in Mire v. Lafourche Parish School Board, 62 So.2d 541, 544. There the Court referred to 13 C.J.S., *728 Carriers, which in § 677, on page 1254, reads as follows:
"* * * although the carrier does not insure that the passenger will be carried safely, as stated supra § 676, the general rule, as stated in Corpus Juris, which has received approval, when reduced to its simplest form may be stated to be that the carrier is bound to exercise as high a degree of care, skill, and diligence in receiving a passenger, conveying him to his destination, and setting him down safely as the means of conveyance employed and the circumstances of the case will permit; * * *."
In the Mire case, supra, a little girl seven years of age in alighting from a school bus spoke to the driver and asked to be "crossed." Instead of himself getting out of the bus, the driver delegated this duty to a 15 year old high school boy, and the boy held out a red flag as the little girl stepped into the road and was struck by a passing automobile. The driver had been operating such a bus for some time and in his contract with the school authorities there was a provision to the effect that in such situations the "driver shall get out of the bus, look both ways for approaching cars," and make certain that the children might cross in safety.
This provision in the contract between the school board and the driver indicated a realization that such care was necessary, and the Court held that, in thus delegating this duty to a young high school boy, the driver had been negligent and that this negligence was responsible for the accident. Here we think that there was no such duty in Landry.
Counsel for plaintiff feel that the case of Cartwright v. Graves, 182 Tenn. 114, 184 S.W.2d 373, 374, cited by them is very much in point here and that the reasoning found therein is sound.
In the Cartwright case the child who was hurt, having alighted from a "school" bus, ran "from the bus door around the rear * * *." The driver saw the other vehicle approaching, knew the child was going to run around the back end of the bus, and did nothing to prevent the accident. We think the facts are quite different from those found here.
Another case cited by counsel for plaintiff and confidently relied on is Vogel v. Stupi, 357 Pa. 253, 53 A.2d 542. However, there again a school bus was involved and the driver who saw or should have seen the other car approaching at a speed of from 30 to 50 miles an hour, opened the doors of the bus and allowed a group of children to alight. The Court held that he should have seen the approaching car and should have realized that the children might attempt to cross the road in front of the oncoming car. That situation is quite different from the one presented here.
Mr. and Mrs. Lewis, the parents of the little girl, permitted the children, particularly Cynthia Ann, to go both to and from school without any older person to look out for them, and this little girl was the one in that family who was given the authority to look out for the others. This is made evident by the fact that she says that when they found that the books had been left on the bus, she "figured I would be the only one to go back, so I went across the street and waited for the bus, so when Mr. Landrywhen he came back, I got the books off the bus."
Though the road was paved with what is known as blacktop, it is shown that the traffic on it was extremely light. Landry said that, though he was often on the road during an eight-hour day, seldom did he see in an entire day more than "10 or 20 cars."
There are in the record several photographs showing the road in both directions for quite some distance. It must have required a considerable length of time for the photographer to set his camera and to take these pictures, yet in no one *729 of them is there shown even one other car. If the traffic had been even the least bit heavy surely several cars would have appeared while these photographs were being taken.
Even if there was a duty in Landry to get out and escort the little girl or to do more that he did, it is shown that after he gave the books to the child, before he could do anything, "she darted right across in front of the bus." Immediately Landry looked into the rear view mirror and, noticing that the Goodman car was approaching, called out to the child "go backgo back."
There is a controversy over the question of whether he called to her to go back or whether he called to her to run. Counsel for plaintiff assert that the record shows that he called out to her to run and that this was what caused her to dart out into the road. We think that it is abundantly shown that he called to her to go back and did not tell her to run, and that the claim that he called to her to run is only an afterthought. In his original petition plaintiff himself alleges that as the child started to cross the driver, and we quote from the petition, "hollered to the said Cynthia Ann Lewis to go back, but the warning came too late."
Unfortunately, because of his physical condition, Otis was unable to testify.
When we come to consider the claim against Mr. and Mrs. Goodman, we find it extremely important that the bus was not a school bus, but was a regular common carrier devoted to the transportation of all persons who might wish to ride. There were no identifying markings or colors which should always be on a school bus. We have been shown nothing in our State laws, nor in our city ordinances which require that the driver of an automobile bring his vehicle to a stop before passing such a stationary bus. L SA-R.S. 32:1 et seq. is a compilation of our state statutes on the subject of the operation of motor vehicles, and there is nothing therein which requires such a stop, though paragraph H of section 233 requires that such a stop be made where a school bus is involved. City Ordinance 18,002, C.C.S., is offered in evidence, but we find nothing therein which requires such a stop.
It is true, of course, that regardless of any express statutory provision, the dictates of common prudence require extreme care in such situations, for ordinarily when the operator of an automobile is about to pass a standing bus, he should realize that the stopping of the bus has been made to allow a passenger to board or to alight and, until he makes reasonably certain that no one is about to walk around the bus into the road, he should not attempt to pass.
However, Mrs. Goodman says that she felt certain that there was no danger and the evidence warrants the conclusion that she did everything required by the circumstances which confronted her. She first noticed the bus when her car was "a block and a half or two blocks away." She says that she noticed that the driver of the bus did not make any motion out of his window, meaning that he gave no signal that he was about to start. She realized that the bus was standing still and while she was traversing that distance of almost two blocks, the bus did not start and, although she could see on both sides of it, she saw no one alight from it or enter it. When she first noticed the bus standing on the far side of the road, she reduced her speed in order to allow it to pull out into the road ahead, but when she reached a point near and the bus was still standing and no one got on or off, she increased her speed and attempted to pass to the left of the bus, and just as she reached a point opposite its front end, although she had not seen the little girl, "it seemed like the child just leaped right in front of the car."
It seems evident that the reason for her not seeing the little girl on the far *730 side of the bus was either that the child had entered the bus, as is contended by plaintiff, or had stood very close to it between the opened doors, and, in reaching for the books, had obscured her body so that it could not be seen by Mrs. Goodman. It would appear that unfortunately the joking request of the driver for a reward and the child's answer and the short conversation which followed must have been responsible for the time which elapsed while the child was in or was very close to the vehicle.
If Mrs. Goodman had not seen the bus for an appreciable distance before she reached it, or if she had dashed around it without looking, she may have been charged with negligence in not realizing that some one was about to leave it and might walk out into the road ahead of her car. But busses some time stop for reasons other than to let passengers in or out. In fact, if Cynthia Ann had not gone back for the books, no doubt Landry would have himself gotten out of the bus and left it standing on the edge of the road while he took the books over to her house.
Mrs. Goodman says that while she was approaching the bus, she kept it "in mind to see whether it would pull off, or to see if I could see anyone getting on or getting off." This was the normal and proper action of a reasonably prudent person and she was not required to do more.
Our conclusion is that there was no negligence in either Landry or in Mrs. Goodman.
We are in full accord with the reasons given by the District Judge. As to Mrs. Goodman, he said:
"She was driving on a street and in a neighborhood which does not have heavy traffic conditions and the court is of the opinion that she was driving with due regard to the circumstances and conditions then and there existing."
As to the charges of negligence against Landry, the District Judge said:
"Mr Landry testified that he did shout to the child to warn her, while she was in front of the bus, and his testimony is uncontradicted; he also testified that after the child received her books she immediately started across the front of the bus before he even had an opportunity to close the door; the whole transaction took place very quickly."
The little girl was seriously hurt, her medical and hospital expenses were heavy and her suffering must have been great, but we cannot allow these considerations and the pity and sorrow which are always existent to influence our conclusions that no one is liable.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.