ELLIS, Judge.
This is an action for injuries sustained by an eleven year old minor when she was struck by an over-taking vehicle when crossing a street in front of a bus. The Civil District Court for the Parish of East *135 Baton Rouge rejected the demands of the plaintiff dismissing her suit, and she had appealed.
This is a direct action against the liability insurer of William C. Tate. The plaintiff originally brought this action individually and as natural mother of her illegitimate child, Evelyn Patin, but subsequently she was qualified as tutrix and substituted as plaintiff in that capacity.
On April 16, 1956, a City bus traveling south on Thirty-third Street in the City of Baton Rouge came to a stop on the west side of said street to take on a load of waiting passengers, among whom was Bertha Patin, the plaintiff. While the bus was loading, a minor daughter of the plaintiff, Evelyn Edwards Patin, came from the east to the west side of Thirty-third Street to give her mother a bundle of clothes. After she had handed these clothes to her mother at the front door of the bus, located on its right front corner, this child prepared to return to the. east across Thirty-third Street. As she attempted to cross this street she was struck by the Tate vehicle which was also traveling in a southerly direction and was in the act of passing the parked bus when the accident occurred.
The plaintiff contends that Tate was guilty of negligence to which neither the child nor the mother contributed and that this negligence was the proximate cause of the accident.
The defendant admits the occurrence of the accident but denies any negligence upon the part of Tate, and alternatively pleads contributory negligence of the mother and the minor child, in that the mother was negligent in sending the child across the street from in front of the bus when it was not safe to do so, and the child in running from in front of the bus at a time when it was not possible for Tate to avoid the accident ; the child created an emergency and failed to keep a proper look-out.
Thirty-third Street at the time of this accident was a two-way highway. Intersecting it to the east of the point where the bus had stopped was Cane Street which did not extend across Thirty-third Street and continue westerly, but which came to a dead end at Thirty-third Street.
Tate, the driver of the vehicle which struck the child, testified he had been traveling in a southerly direction on Thirty-third Street at a speed of approximately 35 miles per hour; had reduced his speed to some 25 miles per hour one block north of the point where the accident occurred; he saw the stopped bus on the west side of the street and saw passengers entering it; when he reached a point close to the rear of the bus the child suddenly darted out from the front of the parked bus and he immediately applied his brakes. He further stated when confronted with this emergency he swerved to his left but the child continued to run across the street and he was unable to avoid striking her.
Tate testified further that when he reached the point close to the rear of the bus, suddenly and without any warning he saw an arm swing out in front of the bus and that is when he applied his brakes and swerved to the left. With reference to the actions of the child he testified:
“Q. Now what actually happened after you saw the arm come out from in front of the bus, swing out as you put it?
“A. Well the case was this child, as her arm came out well she just darted right out. It seemed like a run to me; her legs was wide apart and she seemed to be running. She didn’t hesitate at all, just came right on out.”
The plaintiff, mother of the child, testified she looked both south and north along Thirty-third Street before she told the child to cross the street; that she saw no approaching vehicles and instructed the child to cross. In answer to a question as to whether the child walked or ran across the street this witness stated: “Well to my idea of seeing her she was walking or just *136 skipping, I would say; it wasn’t running.” She stated the Tate automobile was stopped behind the. bus in front of another stopped car, the Tate vehicle being the first one behind the bus. She testified that the Tate automobile pulled out from behind the bus and hit the child.
The trial court stated, in its written reasons for judgment, that it was impressed with Tate as a witness and that the physical facts and all of the testimony did not bear out the contention of the mother of the child that the Tate vehicle was parked behind the bus and precipitously pulled out and around the bus striking the child.
The physical facts show the Tate automobile left 31 feet of skid marks. One of the plaintiff’s witnesses, Hiram Smith, the driver of the bus, testified he heard the noise of the brakes being applied and looked in his rear vision mirror and saw the Tate automobile at about the rear of the bus and to its left side. These are the physical facts and testimony which proved to the trial court that the Tate automobile did not pull out from a stopped position behind the bus and it concluded, in the written reasons for judgment, as follows:
“It is my opinion that this accident resulted from the child darting from a safe but hidden position from the driver Tate and emerging in.front of his car, when, by the exercise of due care and prudence, he was unable to avoid striking her.”
The testimony of the child is that she was familiar with Thirty-Third Street, having crossed it before and knew it was a busy street and heavily traveled; also dangerous to cross. She stated she knew it was dangerous to cross in front of the bus and that she looked both ways and saw nothing coming but that she stood a little while after looking. She further said she did not look just as she got to the edge of the bus and admitted she was walking fast and was probably skipping; that she had only taken six or seven steps before she was hit and that the accident happened very quickly after she stepped from in front of the bus.
Another witness for the plaintiff testified the child was moving rather fast.
The officer of the Baton Rouge City Police who investigated the accident stated the mother of the child told him at the scene that the child ran from in front of the bus.
The speed limit at the site of the accident was 35 miles per hour. A speed and stopping distance chart introduced by the defendant without objection showed that a vehicle traveling 20 miles per hour requires a distance of 43 feet to stop and one traveling 25 miles per hour requires a distance of 61 feet. As aforesaid, the skid marks left by the automobile had an over all length of 31 feet. A vehicle traveling 25 miles an hour when brakes were applied would leave skid marks of Z2X/2 feet. From these physical facts it would appear that there was no excessive speed involved in this accident. The car traveled only 9 feet after the child was struck and Tate testified he applied his brakes as soon as he saw the arm of the child swing past the front of the bus.
In Basham v. Ohio Casualty Insurance Co., La.App., 106 So.2d 129, 131, the Court, in holding a defendant free of negligence, said:
“On the other hand, when a motor vehicle is moving in a street at a lawful speed and is obeying all the rules of the road, the driver thereof is not generally liable for injuries incurred by a child who darts from behind a parked automobile and in front of the vehicles so suddenly -that the driver could not see nor reasonably anticipate his presence and thus stop in time to avoid injuring him.”
In Lewis v. Goodman, La.App., 92 So.2d 723, a motorist was approaching from the rear of a bus. A girl seven years and *137 ten months of age, had left her school books on the bus and on its return trip the bus stopped, she got her books and darted from the front of the bus into the path of an approaching motorist. The court stated there is nothing in the State law nor in any ordinance applicable which requires the driver of an automobile to bring his vehicle to a stop before passing a stationary bus. There the motorist had seen the bus for nearly a block and a half, reduced speed and when a point near the bus was reached, the bus still parked, speed was increased and an attempt made to pass on the left side of the bus. As a point was reached just opposite the front end the child came out in front of the car. This motorist was held not to be guilty of any negligence and writs were denied by our Supreme Court.
Counsel for the plaintiff maintains the Lewis case, supra, is not determinative of the case at bar because an entirely different factual situation existed there than the one here. It is pointed out in plaintiff’s brief that the accident in the Lewis case happened on a country road which was relatively deserted but that the accident here occurred on a heavily traveled thoroughfare ; that the defendant in the Lewis case saw no activity around the bus in question or anything to indicate passengers were boarding or leaving the bus; that this lack of activity existed for the time it took the defendant to travel one and one-half blocks from the time she first saw the bus until she reached it. The contention is that here the situation was such that Tate, the driver of the car which struck the child, was charged with exercising extreme care in making certain that no one was about to walk around the bus which was stopped and that he should have made certain before he proceeded to pass the bus that no one would enter his path of travel from the front part of the bus. This contention is based mainly upon a quotation from the Lewis case, supra, which reads as follows [93 So.2d 729]:
“It is true, of course, that regardless of any express statutory provision, the dictates of common prudence require extreme care in such situations, for ordinarily when the operator of an automobile is about to pass a standing bus, he should realize that the stopping of the bus has been made to allow a passenger to board or to alight and, until he makes reasonably certain that no one is about to walk around the bus into the road, he should not attempt to pass.”
Counsel for the plaintiff, in his brief, states the above is a correct statement of the law. We are of the opinion that the above statement is obiter dictum and cannot be considered to be a correct statement of the law. As a matter of fact,, the Court in the Lewis case, at page 729,. stated:
“When we come to consider the claim against Mr. and Mrs. Goodman,, we find it extremely important that the bus was not a school bus, but was a^ regular common carrier devoted to the transportation of all persons who might wish to ride. There were no identifying markings or colors which should' always be on a school bus. We have-been shown nothing in our State laws,, nor in our city ordinances which require that the driver of an automobile bring his vehicle to a stop before-passing such a stationary bus. LSA-R.S. 32:1 et seq. is a compilation of our state statutes on the subject of the operation of motor vehicles, and there-is nothing therein which requires such a stop, though paragraph H of section 233 requires that such a stop be made where a school bus is involved.”
The bus involved in the present case was not a school bus and the evidence indicates that Tate, the driver of the vehicle which struck the child, felt certain there was no danger in proceeding. As there was no legal duty to stop before passing the bus, and the evidence shows he did *138 everything required of him by the circumstances with which he was confronted when the child suddenly darted out from in front of the bus, his situation is the same as that of the driver in the Lewis case. There is no duty to stop before passing a stopped bus, whether it be on a country road or a city street, unless there are some facts confronting the driver of the passing vehicle which indicate reasonably that some one is going to run out in front of him. We do not find this to be the case here and agree with the trial court that Tate was guilty .pf no negligence.
This case involves only issues of fact and in such cases the findings of the lower court are entitled to great weight. Its judgment will not be disturbed unless manifestly erroneous.
The judgment of the lower court is affirmed.