### L. M. ROBERTS v. NORTHWEST AIRLINES, INC.[1]

October 22, 1937.

No. 31,335.

[1]Reported in 275 N. W. 410.

*Humphrey Barton* and *Walter T. Mack,* for appellant.
*Bundlie, Kelley & Finley,* for respondent.

LORING, JUSTICE.

This is an appeal by the plaintiff from an order denying his motion for new trial after a verdict had been directed for the defendant in an action in which plaintiff sought to recover for personal injuries sustained by him while riding in an airplane owned by the Brown-Morgan Flying Service.

By profession the plaintiff is a physician who has for many years practiced at the city of Little Falls in this state. At the time of the trial he was between 74 and 75 years of age. Among his patients at Little Falls was a Barton family. A son of that family was ill at Lemmon, South Dakota, and it was agreed between the plaintiff and the local physician that it was desirable to take the young man immediately to the hospital by airplane if practicable. On March 5, 1936, Mr. Barton called the defendant by long-distance telephone and endeavored to make arrangements for an airplane to take the patient from Lemmon to Rochester, Minnesota, but it was found that the defendant had no plane equipped with skiis, which were necessary to make a landing at Lemmon, so the matter of airplane transportation from that point was given up on the fifth. On the following day it was arranged that the patient be brought to Minneapolis by train, and the plaintiff inquired of the defendant company if he could arrange for an "ambulance airplane" to take the patient from Minneapolis to Rochester. A tentative arrangement was made for a plane at a cost of $72, but the matter was left without closing a contract because the plaintiff did not know whether the patient would arrive in Minneapolis alive or able to stand the trip to Rochester. The plaintiff planned to arrive in Minneapolis

from Little Falls by bus about five o'clock of the evening of March 6, but changed his plans and came with the Barton family in their car. The Wold-Chamberlain airport at Minneapolis, from which this plaintiff sought to fly, was owned by the city of Minneapolis, and the ticket office there was jointly operated by defendant and the Hanford Airlines. Also, there were numerous planes variously owned at that port which were for charter.

The defendant was principally engaged in scheduled passenger transport service between Chicago and Seattle by way of St. Paul and Minneapolis, and special arrangements and preparations had to be made if a plane were to be put in condition for the chartered trip to Rochester. Such preparation would require about 12 man-hours of labor in servicing the plane and making the internal arrangements for carrying the patient, who was expected to arrive at Minneapolis by train about 10:30 o'clock that evening. One of the defendant's officers attempted to get in touch with the plaintiff or Mr. Barton at Minneapolis after the bus from Little Falls was due to arrive, but was unsuccessful in so doing. He then advised the office of the airport in Minneapolis that unless his company had sufficient notice to give it time to make the preparations it would not be interested in making the chartered trip to Rochester. Apparently through the evening this information reached Mr. Lohmar of the Brown-Morgan Flying Service, and it is his claim that about 9:30 o'clock in the evening he talked with Mr. Barton by telephone, telling Barton that he represented the Brown-Morgan Flying Service and that he had a plane ready to make the trip to Rochester. Barton and Roberts both deny any such conversation, although the plaintiff, who claims his memory was impaired by the accident, said in one instance: "I have no recollection of calling at nine o'clock in the evening. If I did, I don't remember it." At any rate, Lohmar had his Brown-Morgan plane ready for the flight when the ambulance bearing the Barton boy arrived at the Wold-Chamberlain field. Some seats were then removed and mattresses placed in the plane for the patient to lie upon, after which the patient was placed in the plane. The plaintiff then went to the office in the administration building of the airport to pay the chartered price for

the plane. The employe in charge of the office states that the plaintiff asked if the chartered price was not $72; that he was then informed that that was the Northwest Airlines price; that he was being taken in a private plane, the charge for which was but $55; that the plaintiff then remarked that if he shopped around a little bit he might be able to get a plane cheaper than that. This conversation is denied by the plaintiff, but it is agreed that the plaintiff paid but $55 for the trip, and it is clear that the Northwest's price was $72, and that that was the price which it had named to the plaintiff by telephone. In view of the disposition we make of the other question, we need not pass upon the question of negligence in the operation of the plane.

The trial court in directing a verdict for defendant took the position that the plaintiff had wholly failed to establish any contract with the defendant for the charter of a plane. Taking the plaintiff's own version of the telephone conversations and giving his denials full force, we are of the opinion that the trial court was correct in directing the verdict. On the morning of March 6 the plaintiff called the defendant by telephone and said:

"Taking up the matter we had been phoning about the night previous, I wanted to know whether if the patient came in by train from Lemmon, we could hire an ambulance airplane with a skilful driver to take us from the Minneapolis airport to Rochester. Q. What did they say? A. That they could. Q. Was there anything else said? A. Practically nothing." An hour or two later he called the defendant again, and relates the conversation as follows: "I wanted to know if the patient was dead or couldn't be moved when he arrived, if we would still be held to pay for the plane, and he said, 'No.' Q. Is that all the conversation at that time? A. That is all."

According to the plaintiff and Barton, there were no further conversations or arrangements, although the defendant's witness says that at the second conversation he corrected a previous price he had quoted to the plaintiff and said that the charge would be $72 instead of $80. According to the plaintiff's theory of the case, there

was no further telephoning except a message from the travel-aid attendant at the Milwaukee station, who called up the airport after the arrival of the train and told someone there that an ambulance was on its way out to the airport with a patient.

Was there a hiring from the defendant? Taking the conversations in the light most favorable to plaintiff, they amount to no more than an inquiry by him as to whether or not a special plane could be chartered for the trip, how much it would cost, and whether or not a charge would be made if the patient were not in condition to go. Apparently the plaintiff so regarded the conversations, because in reply to a question on cross-examination, relating to the first conversation on the morning of March 6, he said: "I asked if they could provide us with a plane *provisionally* to meet the train coming in on the Milwaukee at ten o'clock at night to take a patient to Rochester, an ambulance plane with an experienced pilot"; and again on cross-examination he said he did not know whether he was going to use the plane from Minneapolis or whether he was going to take the patient from Minneapolis to Rochester. We see no offer and acceptance here, and, without that, of course there was no contract on the part of this defendant. Beaupre v. Pacific & A. Tel. Co. 21 Minn. 155. While there was an offer by defendant, there was no unqualified acceptance by plaintiff.

Had the plaintiff had such conversations with representatives of the Great Northern Railway about a special train to take him to Fargo and had then gone to the station in Minneapolis and boarded a Northern Pacific special under circumstances like those now before us, it could not be successfully contended that the Great Northern would be responsible for the derailment of the special.

Nor do we think that the defendant was estopped to deny a contract for transportation by the fact that when the plaintiff asked for a receipt, because he was "handling other people's money," the clerk in the ticket office receipted for the $55 on a Northwest Airline blank.

The order is affirmed.