Argued September 7, affirmed November 21, 1962

NEIDERT *v.* PORTLAND STAGES, INC.

376 P. 2d 92

*William A. Babcock,* Portland, argued the cause for appellant. With him on the brief was Ben T. Gray, Portland.

*Charles S. Crookham,* Portland, argued the cause for respondent. With him on the brief were Vergeer & Samuels, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Denecke, Justices.

PERRY, J.

This is an action brought by plaintiff against the defendant to recover for personal injuries. The jury returned a verdict for the defendant, and plaintiff appeals.

The admitted facts are that plaintiff, an elderly woman, was a passenger on defendant's motor bus; that the bus was stopped in a place where it was safe for passengers to alight; that the plaintiff fell and suffered injuries.

The plaintiff's assignments of error are all based upon a ruling of the trial court, that as a factual question, the relationship of carrier and passenger had terminated at the time of defendant's alleged negligence, if any, and therefore the rule of law that a public carrier owes its passengers, while they are passengers, the duty to exercise the highest degree of care for their safety did not apply, but the general duty of reasonable care was applicable.

The extent of defendant's duty toward the plaintiff, therefore, depends upon the particular facts from

which the deductions are to be drawn as to whether the plaintiff was a passenger or that relationship had ceased at the time of the alleged negligence and injury. ■■ The carrier-passenger relationship exists by reason of contract, express or implied. *Fels v. East St. Louis & S. Ry. Co.*, CCA Mo, 275 F 881 (1921) ; *Todd v. Louisville & N. R. Co.*, 274 Ill 201, 113 NE 95; *Roberts v. Northwest Airlines*, 201 Minn 89, 275 NW 410. When this relationship exists there is imposed upon the carrier the duty of the highest degree of care, as long as the passenger is traveling in its conveyance and until the passenger has alighted in a place of safety. *Corrigan v. Portland Traction Co.*, 157 Or 496, 73 P2d 378 ; *Lewis v. Pacific Greyhound Lines, Inc.*, 147 Or 588, 34 P2d 616. A place of safety is not reached if the place of disembarkation is such that the passenger may be struck and injured by a resumption of the movement of the conveyance. *Lilley v. Key System Transit Lines, Inc.*, 136 Cal App2d 737, 289 P2d 517; *Houston v. Lynchburg Traction & Light Co.*, 119 Va 136, 89 SE 114; *Mayor v. St. Louis Public Service Co.*, (Mo 1959), 269 SW2d 101. With these rules of law before us, we will examine the evidence.

The plaintiff testified that she boarded the bus, and carried onto the bus a small sack of fruit and fruit juices. She seated herself near the front on a bench that ran lengthwise of the bus, and deposited her sack behind the driver's seat. When she arrived at her destination she paid her fare and the door was opened to permit her to leave the bus. The point selected for her disembarking by the operator of the bus was a level concrete walk. On direct examination she described the occurrence of her falling, as follows:

"Q Will you just tell us, tell the jury, please, just tell the jury in your own words, Mrs. Neidert,

what happened when you started to alight from the bus?

"A Well, I was getting out and I remembered I had left my package, you know, and I went to reach in for it after I stepped down and just at that time I noticed that the door was closing and it startled me and I started running but I noticed there was a crumpled up piece of my garment caught and I ran so fast; I never ran so fast in my life, and of course then I fell, but I think I took from eight to ten steps as fast as I could go. Like that. (Witness rapping knuckles on witness stand.)

"Q What direction did you take the steps?

"A Oh, southeast and I fell on the right-hand side, I fell straight out right on my side, just as straight as I could fall with my arm out that way on my right-hand side facing the bus, looking under it. I could look right under it where I fell.

"And it was probably about, oh, I imagine this distance I was laying from the bus. I was laying straight out on my right-hand side facing the bus. I could look right under it."

And on cross-examination:

"Q Both of your feet were on the pavement before you started to reach for your package, is that right?

"A Yes, but I hadn't gone away from the bus any.

"Q Yes, but before any of this happened, you had completely alighted from the bus, hadn't you?

"A I am sure I did."

She did not know whether the bus moved or not. A boy, nine years of age, who was playing near by, was called by the plaintiff, and testified of the occurrence, as follows:

"Q All right now, I want you to tell the jury, please, in your own words, just what you saw?

"A Well, I seen her when she stepped off of the

bus and from what I seen she had put her foot back on the step of the bus to reach in for a package when the bus started off and she fell. * * *"

And, on cross-examination:

"Q You say you saw Mrs. Neidert get off the bus. Did she get off the bus altogether?

"A Well, when she got off of the bus, she stepped off, both feet and then she put her one foot back in to reach in for her package.

"Q Before she could put her one foot back in, she had to turn around, didn't she, Gerald?

"A Yes.

"Q That is right, isn't it?

"A Uh-huh."

The driver of the bus testified as follows:

"Q When you stopped, tell us what you did, what Mrs. Neidert did?

"A Well, she just got up, put her fare in the box, went out the door and she was still talking with this lady next to her and then after she got out, she was waving good-bye to this lady and I closed the door and started in—

"Q Before you get to that, just before you closed the door, where was Mrs. Neidert with respect to the side of the bus?

"A She was what I would say about straight in front of the door.

"Q How far from it, if at all?

"A When I started to close the door, she was approximately two feet from the side of the bus.

"Q And which way was she facing?

"A She was facing straight into the bus door.

"Q At that time?

"A She was.

"Q Was she speaking to the lady that had been with her?

"A She was.

"* * * * *

"Q And then what did you do?

"A I opened the throttle to go ahead.

"Q You started to open the throttle?

"A Yes.

"Q Did you continue to go ahead?

"A No.

"Q Why didn't you continue to go ahead?

"A I heard someone holler, 'My package, oh, my package.'

"Q Now, at this time had the bus started?

"A Sir, I am not sure at the time that I first heard the voice that the bus had ever moved at that time, but I am sure that it did move before I opened the door again.

"Q About how far did it move?

"A Oh, not over two feet."

A passenger on the bus, called by the defendant, testified as follows:

"A Yes, she got off of the bus and she stepped away from the bus, like I said before, about two feet away from the bus.

"Q How far from the bus?

"A Two feet or something like that from the bus, about the middle of the sidewalk.

"* * * * *

"Q Then will you tell us what happened? Did you see anything happen to Mrs. Neidert?

"A I seen her fall.

"Q How far from the bus was she when she fell?

"A Two or three feet from the bus.

"Q In which direction did her head go?

"A Well, from my view sitting here, she fell that way. (Indicating) Her head fell more like east.

"Q Her head fell towards east?

"A Uh-huh.

"Q I see. Was any part of Mrs. Neidert's person or her clothing in contact with the bus immediately before she fell?

"A No, sir."

This witness testified the door was never closed nor did the bus move.

■ There is not a scintilla of evidence that plaintiff was deposited in an unsafe place or in a position where she would be injured by the starting of the bus. The only reasonable conclusion that can be drawn from the evidence is that after plaintiff had alighted from the bus, she remembered her package and attempted to retrieve it before the bus departed. It therefore clearly appears that the contractual obligation of the carrier of safe carriage ceased when the plaintiff had departed from the bus and reached a place of safety. Thus, at this point, the relationship of carrier and passenger ceased.

■ The question of whether the defendant was or was not negligent under all of the circumstances then existing in failing to anticipate that the plaintiff might attempt to re-enter the bus for the purpose of retrieving her package commenced after the contract of safe carriage had terminated, and could only require the exercise by the carrier and its agents of reasonable care. As previously stated, this issue as to reasonable care was submitted to the jury.

Finding no error, the judgment is affirmed.